# United States Court of Appeals
## For the First Circuit

No. 14-1821

UNITED STATES OF AMERICA,

Appellee,

v.

DEREK HINKLEY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

James S. Hewes, for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom
Thomas E. Delahanty II, United States Attorney, was on brief, for
appellee.

September 30, 2015

**LYNCH**, **Circuit Judge**.  In January 2014, Derek Hinkley entered a conditional guilty plea to one count under federal law of sexual exploitation of a minor.  18 U.S.C. § 2251(a).  As allowed by his plea agreement, he now appeals the district court's denial of three motions to suppress.  He also challenges his sentence of 300 months of imprisonment.  We affirm his conviction and sentence.

I.

As to the motions to suppress, we recite the relevant facts as found by the district court, consistent with record support. United States v. Arnott, 758 F.3d 40, 41 (1st Cir. 2014).  As to the facts relevant to the sentencing appeal, we take the facts as set forth in the plea colloquy, the unchallenged portions of the presentence report, and the sentencing hearing.  United States v. Innarelli, 524 F.3d 286, 288 (1st Cir. 2008).

On July 17, 2012, Derek Hinkley invited two boys, ages 12 and 15 (Victim #1 and Victim #2 respectively), to spend the night at his apartment, with their parents' permission.  Both boys were special education students who had known Hinkley for several months.  Hinkley had told them and their parents that he was eighteen years old even though he was actually twenty-eight.  On the way to the apartment, Hinkley told the boys it was a "free house" and that they could "walk around naked" if they wanted to. At the apartment, Hinkley showed the boys his knife collection and

- 2 -

threatened to cut off their penises if they did not watch pornography and masturbate in front of him using an imitation-vagina sex toy. The boys complied, and Hinkley used a webcam to stream the image of Victim #2 masturbating on a social media site, Omegle.

On July 19, 2012, police officers received a report from one of the boys' parents. On the way to the victims' neighborhood to investigate the matter, police detective Derrick St. Laurent observed a man surrounded by a group of neighborhood children on the sidewalk. St. Laurent approached the man "on a hunch," learned that the man was Hinkley, and then asked him to come to the Lewiston police station for an interview. The reason for asking Hinkley to come to the station, St. Laurent testified, was that he prefers to conduct interviews at the station so that the interviews can be recorded. Hinkley transported himself to the police station for the interview and waited in the lobby for St. Laurent to arrive. Hinkley was then questioned by St. Laurent in an eight-by-twelve foot, windowless room. At the outset of the interview, St. Laurent told Hinkley that he was not in custody, asked him whether he would mind if the door was closed, and reminded him of how to exit the police station in the event of an emergency. Twenty-nine minutes into the interview, St. Laurent told Hinkley that he was still free to leave. Thirty-eight minutes into the interview, he told Hinkley that he was no longer free to leave. At this point,

Hinkley received Miranda warnings and signed a consent-to-search form.

Relying on the consent-to-search form, the police then took Hinkley to his apartment and in his presence seized, among other things, a laptop computer and a sex toy. They found approximately eighty images of child pornography in the laptop's internet cache and also found browsing history showing the Omegle website being accessed on July 18, 2012, at approximately 12:53 AM. The police then transported Hinkley to Androscoggin Jail.

On July 20, 2012, Hinkley made further inculpatory admissions during an interrogation at Androscoggin Jail. Before proceeding with that interview, St. Laurent asked if Hinkley remembered the Miranda warnings he was read the previous day. Hinkley answered in the affirmative. St. Laurent nevertheless asked Hinkley whether he wanted the warnings repeated. Hinkley answered in the negative. As such, no new Miranda warnings were given.

On March 12, 2013, Hinkley was indicted on one count of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a). Hinkley filed motions to suppress three different pieces of evidence: (1) statements he made to Detective St. Laurent at the police station on July 19, 2012; (2) physical evidence seized during a search of his apartment after the July 19, 2012, interview; and (3) statements he made to St. Laurent at

Androscoggin Jail on July 20, 2012.  The district court denied all three motions.

On January 30, 2014, Hinkley entered a conditional guilty plea on one count of sexual exploitation of a minor.  The plea agreement reserved his right to appeal the denial of the three motions to suppress.

The district court calculated Hinkley's guideline sentence range as follows: The base offense level was 32, per U.S.S.G. § 2G2.1.  His adjusted offense level was 42, after a two-level enhancement due to the victims being between 12 and 16, a two-level enhancement because the offense involved sexual contact, a two-level enhancement for use of a laptop computer to disseminate images of Victim #2 over the internet, a two-level enhancement because the victims were in his care, and a two-level enhancement for misrepresenting his age.  He also received a five-level enhancement for a pattern of activity involving prohibited sexual contact and a three-level reduction for acceptance of responsibility, yielding an offense level of 44.  Because the maximum offense level is 43, the total offense level was 43.  While the guideline sentence based on his offense level was life imprisonment, the statutorily authorized maximum sentence is 360 months so the guideline range was considered to be 360 months.

On July 28, 2014, Hinkley was sentenced to 300 months of imprisonment, a life term of supervised release, and a $100 special assessment. This appeal followed.

## II.

In reviewing a denial of a motion to suppress, we review a district court's legal conclusions de novo and findings of fact for clear error. United States v. Fermin, 771 F.3d 71, 76–77 (1st Cir. 2014). We uphold the denial of all three motions.

A.    First Motion to Suppress

Hinkley argues that the statements he made during his July 19, 2012, interrogation at the Lewiston police station should be suppressed, for two reasons: first, because he was in custody from the beginning of the interview but did not receive Miranda warnings until partway through, and second, because the Miranda warnings that he was eventually given were inadequate. Neither argument has merit.

Miranda warnings are required only when a person is being interrogated while in custody. United States v. Crooker, 688 F.3d 1, 10-11 (1st Cir. 2012); see also Miranda v. Arizona, 384 U.S. 436, 444 (1966). A number of factors are relevant to determining whether a person is in custody for Miranda purposes. These include: where the questioning occurred, the number of law enforcement officers present during questioning, the degree of physical restraint, and the duration and character of the

interrogation. Crooker, 688 F.3d at 11. The question is whether, viewed objectively, those circumstances constitute the requisite "restraint on freedom of movement of the degree associated with a formal arrest." United States v. Hughes, 640 F.3d 428, 435 (1st Cir. 2011) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)).

Considering the circumstances, the district court did not err in finding that Hinkley was not in custody at the outset of the interview. Hinkley arrived at the police station voluntarily and was never restrained. See United States v. Francois, 715 F.3d 21, 32 (1st Cir. 2013). He was interviewed by only one police officer. He was told at the beginning of the interview and again twenty-nine minutes into the interview that he was "free to leave." See United States v. Infante, 701 F.3d 386, 396–97 (1st Cir. 2012). The tone of the interviewing officer, as the district court noted, was "generally one of frustration, not anger or aggression." See Hughes, 640 F.3d at 437. The mere fact that the questioning took place in a police station did not create a condition of custody. See Oregon v. Mathiason, 429 U.S. 492, 493–95 (1977) (per curiam); McCown v. Callahan, 726 F.2d 1, 5-6 (1st Cir. 1984). As such, the fact that there were other police officers in the vicinity did not create a condition of custody; that would be the case in any police station interview. Nor was a condition of custody created by the fact that St. Laurent persuaded Hinkley to talk by confronting him

with inculpatory evidence. See Mathiason, 429 U.S. at 495-96. Hinkley was not in custody at the outset of the interview and Miranda warnings were not required until thirty-eight minutes into the interview when the detective told Hinkley he was no longer free to leave.

Hinkley argues that the Miranda warnings he was eventually given were ineffective, for two reasons: first, because he never waived his right to remain silent, and second, because he lacked the capacity to make a valid waiver. As to the first argument, Hinkley made a valid waiver by making uncoerced statements after acknowledging that he understood his Miranda rights. See Berghuis v. Thompkins, 560 U.S. 370, 384 (2010). In making the second argument, Hinkley relies exclusively on expert testimony from his defense psychologist, which he claims is evidence that his waiver was involuntary. However, as the district court found, that expert actually testified that Hinkley had average intelligence, and that Hinkley had demonstrated average performance on a test specifically designed to determine whether he could understand and respond to Miranda warnings. Indeed, the transcript of the interview attests to Hinkley's repeated attempts to resist St. Laurent's increasingly aggressive questioning and his persistence in avoiding a confession, even to the point of fashioning on-the-fly exculpatory explanations for otherwise inculpatory facts. As a result, the district court did not err in finding by a

preponderance of the evidence that Hinkley knowingly and intelligently waived his Miranda rights. See id.

B.    Second Motion to Suppress

Hinkley argues that physical evidence seized from his apartment should be suppressed for two reasons: first, because it was the fruit of an earlier Miranda violation, and second, because the government failed to obtain valid consent to search. Neither argument has merit.

There was no Miranda violation during the police station interview, so the evidence was not "fruit of the poisonous tree." Even if there had been a Miranda violation, failure to give adequate Miranda warnings does not require suppression of the physical fruits of those unwarned statements. United States v. Patane, 542 U.S. 630, 634 (2004).

In arguing that the government failed to obtain valid consent to search, Hinkley again points to his expert's report to argue that he lacked the capacity to consent. To determine whether consent was voluntary, we examine the totality of the circumstances, which may include consideration of the defendant's "age, education, experience, knowledge of the right to withhold consent, and evidence of coercive tactics." United States v. Chaney, 647 F.3d 401, 407 (1st Cir. 2011) (quoting United States v. Marshall, 348 F.3d 281, 286 (1st Cir. 2003)). There was no clear error in the district court's determination that,

- 9 -

considering his age, demeanor, and intelligence, Hinkley was "not so cowed that he was psychologically incapable of giving valid consent."  See United States v. Romain, 393 F.3d 63, 69 (1st Cir. 2004) ("[A] finding of voluntary consent (other than one based on an erroneous legal standard) is reviewable only for clear error . . . .").  Nor was Hinkley's voluntary consent negated by the fact that it was secured by the detective's statement that the apartment would be searched eventually, with or without his consent.  See United States v. Vázquez, 724 F.3d 15, 22-25 (1st Cir. 2013) (holding that consent to search is not invalid where procured by an officer's reasonable assessment that there would be a legal search anyway).

C.   Third Motion to Suppress

Hinkley argues that statements he made at Androscoggin Jail on July 20, 2012, should be suppressed on the basis of inadequate Miranda warnings.  He argues that the detective was required to readminister the full Miranda warnings rather than merely ask if he recalled the previous day's warnings.

Miranda warnings need not be renewed every time there is a break in questioning.  Once an effective Miranda warning is administered, those warnings remain effective until the passage of time or an intervening event makes the defendant unable to fully consider the effect of a waiver.  See United States v. Pruden, 398 F.3d 241, 246–47 (3d Cir. 2005).  We can presume that the defendant

would remember the warnings even if some time has elapsed between the warning and the questioning.  See United States v. Edwards, 581 F.3d 604, 607-08 (7th Cir. 2009).  Here, Hinkley acknowledged less than twenty-four hours after the first set of warnings that he remembered the warnings, remained familiar with them, and did not need them repeated.  There is no indication that the passage of time was long enough to make Hinkley's second waiver involuntary.  See United States v. Nguyen, 608 F.3d 368, 375 (8th Cir. 2010) (concluding that full-day break in questioning did not make Miranda warnings ineffective); Pruden, 398 F.3d at 247 (twenty-hour break in questioning); Guam v. Dela Pena, 72 F.3d 767, 770 (9th Cir. 1995) (fifteen-hour break in questioning).

## III.

In reviewing the procedural soundness of sentencing, we review questions of law de novo, factual findings for clear error, and judgment calls for abuse of discretion.  United States v. Trinidad-Acosta, 773 F.3d 298, 308-09 (1st Cir. 2014).  We review substantive reasonableness for abuse of discretion.  Id. at 309. Hinkley challenges the application of three sentencing enhancements and the substantive reasonableness of his sentence.

A.  Five-Level Enhancement for Pattern of Activity

The district court applied a five-level enhancement pursuant to U.S.S.G. § 4B1.5(b)(1) for a pattern of activity involving prohibited sexual contact.  In applying the enhancement, the

district court relied on reports of inappropriate sexual contact that allegedly occurred between Hinkley and Minor #1[1] from March to June 2012.  Hinkley argues that the anonymous allegations, which were introduced through two written police reports and testimony by the detective who investigated Minor #1's complaint, are unreliable.  He argues that the district court erred in considering the allegations because the identity of Minor #1 was undisclosed, Minor #1 could not be cross-examined, and Minor #1 was known to have unspecified mental health issues.

Evidentiary requirements at the sentencing stage are significantly less rigorous than they are at trial.  As Hinkley concedes, there is no Confrontation Clause right at sentencing. United States v. Luciano, 414 F.3d 174, 179 (1st Cir. 2005).  The sentencing court has broad discretion to accept relevant information without regard to its admissibility under the rules of evidence applicable at trial, as long as it concludes that the information has sufficient indicia of reliability.  United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010); see also U.S.S.G. § 6A1.3(a).  Even conduct that did not lead to a conviction may be considered.  U.S.S.G. § 4B1.5 cmt. 4(B)(ii).

---

[1] To avoid confusion, we note that the unnamed "Minor #1" is an eleven-year-old who is a different person from either Victim #1 or Victim #2, who were the victims on July 17, 2012.

Applying the deferential abuse of discretion standard to the district court's determination of whether evidence was sufficiently reliable for sentencing purposes, United States v. Rodríguez, 731 F.3d 20, 31 (1st Cir. 2013), we find no error. The district court found that it was reasonable to rely on the experience of the detective who prepared the police reports. It also found that certain details reported by Minor #1 made the reports "almost self-authenticating": for example, Minor #1 knew that Hinkley preferred to be called Ethan rather than Derek, described Hinkley befriending him in much the same way that Hinkley befriended Victims #1 and #2, and accurately recounted details of Hinkley's apartment. See United States v. Mills, 710 F.3d 5, 16 (1st Cir. 2013) (finding that corroborated details in confidential informants' statements supported district court's finding of reliability).

B.   Two-Level Enhancement for Misrepresentation of Identity

The district court applied a two-level enhancement pursuant to U.S.S.G. § 2G2.1(b)(6)(A) for Hinkley's misrepresentation of his identity for the purpose of producing and transmitting sexually explicit material. While Hinkley admits that he misrepresented his age, he argues that he should not have received the enhancement because he did not misrepresent any other aspects of his identity.

As Hinkley's counsel conceded at oral argument, this argument is foreclosed by the guideline application note, which explicitly

includes misrepresentation of age as behavior that could trigger this enhancement. U.S.S.G. § 2G2.1 cmt. 4(A). Record evidence amply supports the district court's finding that Hinkley's misrepresentation of his age as eighteen rather than twenty-eight was instrumental to his gaining access to his victims, because it made the minors and their parents put their guards down. See United States v. Starr, 533 F.3d 985, 1002 (8th Cir. 2008).

C.   Two-Level Enhancement for Sexual Contact

The district court applied a two-level enhancement under U.S.S.G. § 2G2.1(b)(2)(A) for an offense involving the commission of sexual contact. Hinkley argues that this enhancement does not apply because he never touched the victim, and forced self-masturbation by the victim does not fit the statutory definition of sexual contact. See 18 U.S.C. § 2246(3); see also United States v. Shafer, 573 F.3d 267, 272-78 (6th Cir. 2009).

We do not decide the merits of this issue because, as Hinkley's counsel conceded at oral argument, any error in the application of this enhancement was harmless. Even if this two-level enhancement were removed, the guideline sentence would remain unchanged.[2] Therefore, "it is sure that the error did not

---

[2] Hinkley's offense level was calculated at 44 and then lowered to the maximum level of 43. Removing the two-level enhancement would bring the offense level down to 42. The guideline range for a first-time offender with an offense level of 43 is life imprisonment, as compared to 360 months to life for an offense level of 42. Because both guideline ranges are higher

- 14 -

affect the sentence imposed." United States v. Alphas, 785 F.3d 775, 780 (1st Cir. 2015) (citing Williams v. United States, 503 U.S. 193, 203 (1992)). Having affirmed the application of the other challenged enhancements, we can say that any error in the application of this two-level enhancement would have been harmless.

D.   Substantive Reasonableness

Hinkley argues that his sentence was unreasonable and that he should have received a lower sentence in light of his lack of criminal history, his own history of sexual abuse as a child, his mental health diagnoses, and his vulnerability to being abused in prison. We find no abuse of discretion by the district court, which already took into account these considerations in imposing a below-guidelines sentence.

IV.

For the reasons stated, we affirm.

---

than the statutory maximum penalty of 360 months, the guideline range would be 360 months under either offense level.