ED CARNES, Chief Judge,
dissenting:
The statute at issue in this case bars surcharges for using credit cards but permits discounts for using other methods of payment. See Fla. Stat. § 501.0117(1). What is the difference between a surcharge and a discount? It depends on whether you go along with the majority opinion’s statute-killing definition of “surcharge,” which renders the statute unconstitutional, or instead heed the statute-saving definition of the term that the legislature itself crafted.
The statutory definition specifies that a surcharge is “any additional amount imposed at the time of a sale or lease transaction by the seller or lessor that increases the charge to the buyer or lessee for the privilege of using a credit card to make payment.” Id. (emphasis added). That is a narrower definition than the ordinary meaning of “surcharge,” which is simply “[a]n additional tax, charge, or cost.” Black’s Law Dictionary 1670 (10th ed.2014). By defining “surcharge” narrowly — using the limiting words “imposed at the time of a sale” — the statute distinguishes forbidden surcharges from permissible discounts based on when the business informs the customer of the actual price terms of its offer to the. customer. By disregarding the statute’s limiting definition of “surcharge,” the majority opinion creates constitutional infirmity where none would otherwise exist.
An example illustrates the distinction drawn by the statutory definition. A store *1252 would violate the statute if it placed an item on its shelf with a sticker price of $100.00 and then charged the customer an unposted $103.00 at the register because the customer used his credit card. The “additional amount” of $3.00 is a “surcharge” because it was “imposed at the time of a sale.” See Fla. Stat. § 501.0117(1). On the other hand, a store would not violate the statute if it placed an item on its shelf with two sticker prices — a $100.00 “cash” price and a $103.00 “credit” price — and then charged the customer at the register based on the method of payment. The “additional amount” is not a “surcharge” because it was “imposed” before “the time of a sale.” See id. It does not matter whether the store characterizes the difference in price as a credit card surcharge, a cash discount, or both. The merchant can speak in any way he chooses so long as he does not ambush the credit-card-using customer with a higher price at the register. What matters is when, from the customer’s perspective, the merchant adds the additional amount to the price because a credit card is used, not how the merchant describes it.
I.
The majority opinion rejects the statute’s narrow definition of the term “surcharge” in favor of what it perceives to be the more colloquial meaning of the word. It is wrong to do so. We are to use the “common and ordinary meaning” of a statutory term only if there is no “statutory or regulatory definition” of it. Wooten v. Quicken Loans, Inc., 626 F.3d 1187, 1193 (11th Cir.2010); see W. Union Tel. Co. v. Lenroot, 323 U.S. 490, 502, 65 S.Ct. 335, 341, 89 L.Ed. 414 (1945) (“[Statutory definitions of terms used therein prevail over colloquial meanings.”). Where there is a statutory definition, we must follow the well-established and common sense principle that “statutory definitions control the meaning of a statute’s terms.” Stansell v. Revolutionary Armed Forces of Colom., 704 F.3d 910, 915 (11th Cir.2013); accord Burgess v. United States, 553 U.S. 124, 129, 128 S.Ct. 1572, 1577, 170 L.Ed.2d 478 (2008) (“Statutory definitions control the meaning of statutory words ... in the usual case.”) (quoting Lawson v. Suwannee Fruit & S.S. Co., 336 U.S. 198, 201, 69 S.Ct. 503, 504, 93 L.Ed. 611 (1949)). After all, the legislature has the right to define the terms it uses, which is why the statutory definition of a statutory term controls statutory construction of the term.
Instead of following that cardinal principle, the majority opinion uses what are— by its own admission — tautological definitions of “surcharge” and “discount,” defining a surcharge as “simply a ‘negative’ discount” and a discount as “a ‘negative’ surcharge.” Maj. Op. at 1239. The result is a rewritten Florida Statute § 501.0117 with a great big First Amendment bull-seye on it. Having redesigned the target so that the only distinction between a “surcharge” and a “discount” is speech labeling it, the majority opinion has no trouble hitting what it aims at. See Maj. Op. at 1239 (“[A] simple slip of the tongue calling the same price difference a surcharge runs the risk of being fined and imprisoned.”); id. at 1245 (“[I]t should be a ‘surcharges-are-fine-just-don’t-call-them-that-law.’ ”). The majority opinion treats the annoying inconvenience of the statutory definition of “surcharge” as nothing more than an “alternative construction,” id. at 1244, which it disparages as a “strained reading” of the statute, id. at 1244. It is passing strange for a court to dismiss a legislature’s definition of its own words as a strained reading of the legislature’s own words.
Because the statute defines “surcharge,” we are bound to construe the statute using *1253 that definition. See Burgess, 553 U.S. at 129-30, 128 S.Ct. at 1577; W. Union Tel. Co., 323 U.S. at 502, 65 S.Ct. at 341; Stansell, 704 F.3d at 915. It is not our role to rewrite, revise, or improve statutes. See Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228, 128 S.Ct. 831, 841, 169 L.Ed.2d 680 (2008) (“We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable.”); Redus Fla. Commercial, LLC v. Coll. Station Retail Ctr., LLC, 777 F.3d 1187, 1196 (11th Cir.2014) (same); United States v. Griffith, 455 F.3d 1339, 1344 (11th Cir.2006) (“[W]e are not licensed to practice statutory remodeling.”); Wright v. Sec’y for Dep’t of Corr., 278 F.3d 1245, 1255 (11th Cir.2002) (“Our function is to apply statutes, ... not to ‘improve’ statutes by altering them.”). Especially not in order to strike down a statute as unconstitutional.
II.
We should use the statutory definition of “surcharge” to save Florida Statute § 501.0117 from a fatal constitutional flaw. Under the constitutional-doubt canon, a federal court must construe a state statute to avoid a constitutional problem if the statute is “susceptible of [such] a construction.” S. Utah Mines & Smelters v. Beaver Cty., 262 U.S. 325, 331, 43 S.Ct. 577, 579, 67 L.Ed. 1004 (1923). The majority opinion acknowledges that duty. See Maj. Op. at 1242-43. It also admits that the statute would be constitutional if read as “a prohibition on bait-and-switch schemes” that “bans the selective raising of previously announced prices at the ‘time of a sale’ for credit-card users.” Id. at 1244 (quoting Fla. Stat. § 501.0117(1)). But that is, of course, exactly what the statute does through its definition of “surcharge” as an additional amount “imposed at the time of sale” for use of a credit card.[1] So perhaps the correct interpretation of the statute should be called “the statutory definition interpretation.” The majority opinion rejects that interpretation for three reasons, none of which is convincing. See id. at 1244.
The opinion’s first reason for rejecting the statutory definition is that it would reduce the statute “into nothingness.” Id. at 1244. How? Because, the majority opinion says, interpreting the statute as “a prohibition on bait-and-switch schemes” would allow merchants to avoid liability by “announcing] to potential customers the price difference in advance of any sale.” Id. Well hello. That is precisely the point of the statutory definition: to limit the conduct forbidden by the statute so that merchants can comply with the statute. Why is it bad to interpret a statute in a way that allows people to conform their conduct to its requirements, that carries out the statutory purpose, and that saves *1254 the statute from being declared unconstitutional? That is not only not bad, and not even half bad, but instead is tripleplus-good.[2]
The majority opinion’s second reason for refusing to interpret the statute using the statutory definition is its belief that the Florida Attorney General has disavowed this reading of the statute in her brief, at oral argument, and in the cease-and-desist letters sent to the plaintiffs. See id. at 1244. The majority opinion is wrong on each count.
As to the cease-and-desist letters, while they might be relevant to an as-applied challenge, the plaintiffs did not challenge the statute as applied.[3] Instead, they brought a facial challenge seeking to enjoin any enforcement of the statute against anyone in any and all circumstances. And their facial challenge claims that the statute violates the right to free speech but does not claim that it is overbroad.[4] Where plaintiffs bring a free-speech facial challenge that is not based on overbreadth, the only way they can succeed is by demonstrating that “no set of circumstances exist” where the law could be validly applied. See United States v. Stevens, 559 U.S. 460, 472-73, 130 S.Ct. 1577, 1587, 176 L.Ed.2d 435 (2010) (quotation marks omitted). That the Attorney General’s cease- and-desist letters set out some facts that she believes would violate Florida Statute § 501.0117 does not exclude the possibility that the statute could be validly applied to other facts. As we have held, “[i]n a facial challenge such as this, the facts of the challenging party’s case are irrelevant.” Miami Herald Pub. Co. v. City of Hallandale, 734 F.2d 666, 674 n. 4 (11th Cir.1984).
As to the Florida Attorney General’s position in her brief, at oral argument, or generally, there are two things about that. The first is that the majority opinion is mistaken in its assumption that the Attorney General disavowed in her brief and at oral argument “a narrow reading of the statute” that would limit its proscriptions to surcharges announced and applied only at the time of sale. Maj. Op. at 1244. The Attorney General argued in favor of that narrow reading repeatedly throughout her brief. See, e.g., Appellee Br. at 5 (“Under the law, a retailer may, for example, price a loaf of bread at $1.00 and charge customers 95 cents if they pay in cash; but the retailer may not use a 95-cent label on the shelf and charge credit card users a dollar at the register.”); id. at 1242 (“The Statute prohibits merchants from imposing a *1255 surcharge, defined as ‘any additional amount imposed at the time of a sale or lease transaction,’ and does not prohibit anyone from expressing any view about the cost of credit or any other subject.”); id. at 1242 (“The Statute’s plain terms demonstrate that it regulates a particular form of pricing conduct — ‘impos[ing] a surcharge,’ defined as ‘any additional amount imposed at the time of a sale or lease transaction ... that increases the charge,’ if the customer uses a credit card.”) (quoting Fla. Stat. § 501.0117(1)); id. at 1244 (“Nowhere in the Statute is there a reference to speech or any indication that a merchant may run afoul of the law by characterizing a shelf price as including an ‘extra charge’ for credit, telling a customer she is paying ‘more for credit,’ or doing anything other than imposing an ‘additional amount ... at the time of a sale or lease transaction ... that increases the charge’ to the consumer.”).
As to oral argument, the Assistant Attorney General argued that we should follow the statutory definition: “[I]f the sweater has a price tag of $100.00, you go to the register and it’s $103.00, that is an extra charge imposed at the time of the transaction. That is a surcharge.” See Oral Argument Recording at 10:22-10:32, Dana’s R.R. Supply v. Att’y Gen., State of Fla., No. 14-14426 (11th Cir. June 11, 2015). If the majority opinion sees all of that as a “disavowal” of the statutory definition, which turns on what happens at the time of sale, what would an avowal of it look like?
Even if the Attorney General had somehow conceded that the statutorily defined meaning of the key statutory term “surcharge” ought to be ignored, the concession would not bind us. The interpretation of a statute is a question of law, see United States v. Pistone, 177 F.3d 957, 958 (11th Cir.1999), and we are not obliged to accept a party’s concession on such questions, see Roberts v. Galen of Va., Inc., 525 U.S. 249, 253, 119 S.Ct. 685, 687, 142 L.Ed.2d 648 (1999) (“[T]he concession of a point on appeal by respondent is by no means dis-positive of a legal issue.... ”); United States v. Lee, 586 F.3d 859, 866 (11th Cir.2009) (refusing to accept the government’s. concession as to the interpretation of a statutory term). The interpretation that the Attorney General has adopted in this case or any other case does not control us because it is our duty, not hers, to interpret and apply statutory language in cases that come before us. See Thompson v. Kentucky, 209 U.S. 340, 346, 28 S.Ct. 533, 536, 52 L.Ed. 822 (1908) (“[I]t is the province of the courts to interpret the laws of the state.... ”); Harris v. Garner, 216 F.3d 970, 976 (11th Cir.2000) (“[T]he role of the judicial branch is to apply statutory language-”). We do not cede our authority to interpret statutes to the parties or their attorneys.
The majority opinion’s final reason for rejecting the statutory definition of “surcharge” is that it will result in the statute “covering] only conduct already covered by the Florida Deceptive and Unfair Trade Practices Act” (FDUTPA). Maj. Op. at 1244 (citing Fla. Stat. §§ 501.201-213). In the majority’s view, it is better to strike down Florida Statute § 501.0117 in its entirety than to read it “to function solely as a backstop” to the FDUTPA. Id. Even assuming that the statutory definition creates some overlap with the FDUTPA, that is not a reason to reject it.
To begin with, there is no authority for the proposition that a saving construction of a statute should be rejected simply because it would create an overlap with another statute. “The Supreme' Court has noted that statutes may ‘overlap’ or enjoy a ‘partial redundancy,’ and yet be ‘fully capable of coexisting.’ ” United States v. *1256 Zheng, 306 F.3d 1080, 1085 (11th Cir.2002) (citation omitted) (quoting United States v. Batchelder, 442 U.S. 114, 118, 122, 99 S.Ct. 2198, 2201, 2203, 60 L.Ed.2d 755 (1979)). For that reason, the Court has refused to consider one statute’s overlap with another one as an important factor in statutory construction. See Pasquantino v. United States, 544 U.S. 349, 358 n. 4, 125 S.Ct. 1766, 1773 n. 4, 161 L.Ed.2d 619 (2005) (“The Federal Criminal Code is replete with provisions that criminalize overlapping conduct. The mere fact that two federal criminal statutes criminalize similar conduct says little about the scope of either.”) (citations omitted). The majority opinion defies the teachings of the Supreme Court by insisting that it is better to strike down a statute than to read it in a manner that creates some overlap with another statute.
Not only that, but the majority opinion is simply wrong about the statutory definition interpretation reducing Florida Statute § 501.0117 to a mere “backstop” for the FDUTPA. It is wrong, among other reasons, because one statute is criminal while the other is civil. Florida Statute § 501.0117 provides a criminal penalty for violation of its provisions and has no civil remedy. See Fla. Stat. § 501.0117(2). By contrast, the FDUTPA provides various civil penalties and a private cause of action as remedies and has no criminal penalties. See Fla. Stat. §§ 501.206(5), 501.207, 501.2075, 501.2077, 501.208(7), 501.211. The statutes are anything but redundant. It is perfectly acceptable for a legislature to “impose both a criminal and civil sanction in respect to the same act or omission.” Helvering v. Mitchell, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). And for a legislature to do it in two statutes instead of one. See, e.g., United States v. Ward, 448 U.S. 242, 254, 100 S.Ct. 2636, 2644, 65 L.Ed.2d 742 (1980) (noting that two federal laws prohibited discharge of pollution into navigable waters, and “the civil remedy and the criminal remedy are contained in separate statutes”); Hicks ex rel. Feiock v. Feiock, 485 U.S. 624, 631 n. 4, 108 S.Ct. 1423, 1429 n. 4, 99 L.Ed.2d 721 (1988) (noting that Cali- • fornia “defines civil and criminal con-tempts in separate statutes”). There is nothing wrong with the Florida legislature deciding that the civil penalties in the FDUTPA were not enough to address the problem of credit card surcharges imposed at the time of sale or lease and to fill in that gap by enacting Florida Statute § 501.0117.
We must adopt a saving interpretation so long as it is “fairly possible,” even if it is not “the most natural” reading of the statutory language. Nat'l Fed’n of Indep. Bus. v. Sebelius, 567 U.S. -, 132 S.Ct. 2566, 2594, 183 L.Ed.2d 450 (2012) (quotation marks omitted). Here the statutory definition interpretation is not only a “fairly possible” interpretation, it is also the most natural one.
III.
The statute’s narrow definition of surcharge makes resolving the plaintiffs’ two facial challenges relatively easy. Here’s why.
The plaintiffs’ first claim is that Florida Statute § 501.0117 violates their right to free speech. But there is certainly a “set of circumstances” where the law would be a valid regulation of economic conduct. See Stevens, 559 U.S. at 472, 130 S.Ct. at 1587 (quotation marks omitted). As I explained earlier, by limiting the definition of “surcharge” to an “additional amount imposed at the time of a sale or lease transaction,” Fla. Stat. § 501.0117(1), the statute prohibits adding an additional amount — at the time of the sale — to the sale price. That is why a surcharge open *1257 ly posted on the store shelf is permissible, while one that comes up for the first time when the customer is paying for her purchase is not. Prescribing when a business can add an additional amount to its price controls the timing of conduct and not the speech describing that conduct. The Supreme Court has long held that the government can regulate economic conduct— including the prices charged by merchants — without violating the First Amendment. See, e.g., 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 504-09, 116 S.Ct. 1495, 1508-10, 134 L.Ed.2d 711 (1996) (striking down a categorical ban on liquor price advertising under the First Amendment but emphasizing that states remain free to make certain prices unlawful through “direct regulation”).
The Second Circuit recently applied that well-settled principle to uphold a New York statute banning all credit card surcharges in the face of a free-speech challenge.[5] See Expressions Hair Design v. Schneiderman, 803 F.3d 94, 106 (2d Cir.2015). The court began with the basic premise that “prices, although necessarily communicated through language, do not rank as ‘speech’ within the meaning of the First Amendment.” Id. So “prohibiting certain relationships between prices also does not implicate the First Amendment.” Id. at 106-07. As the court noted, the “central flaw” in the plaintiffs’ position in that case was their “bewildering persistence in equating the actual imposition of a credit-card surcharge ... with the words that speakers of English have chosen to describe that pricing scheme.” Id. at 107. Under § 518, merchants cannot charge customers additional fees for using credit cards. Under Florida Statute § 501.0117, merchants cannot charge customers additional fees “at the time of sale” for using credit cards. Both statutes regulate “the actual imposition of a credit-card surcharge.” 803 F.3d at 107. Neither regulates what merchants can say about those fees, so neither implicates the First Amendment. Despite what the majority says, the Second Circuit’s interpretation of § 518 is anything but “narrow.” Maj. Op. at 1247 n.9. The majority places our circuit in direct conflict with our sister circuit on this issue.
The plaintiffs’ second claim is that Florida Statute § 501.0117 is void for vagueness. A statute is impermissibly vague if either: (1) “it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits,” or (2) “it authorizes or even encourages arbitrary and discriminatory enforcement.” Hill v. Colorado, 530 U.S. 703, 732, 120 S.Ct. 2480, 2498, 147 L.Ed.2d 597 (2000). Because the plaintiffs brought a facial challenge, they must establish that the law is “impermissibly vague in all of its applications.” Ala. Educ. Ass’n v. State Superintendent of Educ., 746 F.3d 1135, 1138 (11th Cir.2014).
The statute’s narrow definition of “surcharge” eliminates both vagueness concerns. The key vagueness-busting words are “at the time of a sale or lease transaction.” Fla. Stat. § 501.0117. A person of “ordinary intelligence” can easily understand that the law prohibits increasing the price of an item at the time of sale or lease based on whether a credit card is used. See Hill, 530 U.S. at 732, 120 S.Ct. at 2498. Similarly, the statute’s timing requirement prevents the kind of “arbitrary and discriminatory enforcement” that the void-for-vagueness doctrine forbids. See id. A *1258 business can avoid liability under the statute by informing its customers of credit card surcharges before they go to pay for the purchase or sign the lease, instead of afterwards. The statute is not “impermis-sibly vague in all of its applications.” Ala. Educ. Ass’n, 746 F.3d at 1138.
IV.
The majority opinion describes the Court’s role in this case as that of a “judicial Theseus” cast “into the depths of a lexical labyrinth.” Maj. Op. at 1243. The mythological Theseus followed the path laid out by Ariadne’s thread, made his way out of Minos’ labyrinth, and rescued the young Athenians held by Minos. Here, the judicial Theseus should have done the same by following the path laid out by the statutory definition of “surcharge,” making its way out of the supposed lexical labyrinth, and rescuing the statute. Instead, we have a Greek tragedy consisting of a state statute being struck down by a federal court for no good reason.

. The majority suggests that we should ignore the statutory definition’s "at the time of sale” language because the government might have difficulty proving another part of the definition, which is that a merchant imposed the surcharge "for the privilege of using a credit card.” See Maj. Op. at 1244-45 n.7. Demonstrating again its fondness for tautology, the majority reasons that if the government can’t prove a violation of the statute, it can’t prove a violation of the statute. Id. Two things about that. First, there is no support in law or logic for the proposition that if a statute is going to be difficult to enforce, we should rewrite a key statutory definition in order to make the statute unconstitutional and therefore completely unenforceable. Second, enforcement of the statute will not be difficult. To prove that a merchant is imposing an extra charge at the point of sale for the use of a credit card the government could call the store's clerks to testify, could call customers to testify about different prices for the same merchandise depending on the method of payment, or it could simply use testers to gather evidence of different charges for the same merchandise depending on whether cash or credit was used.

. The majority opinion’s position would make sense only if, as it believes, Florida Statute § 501.0117(1) bans all surcharges. See Maj. Op. at 1245. But the statute does not do that. It does not ban them all because it limits the definition of the statutory term "surcharge” to additional amounts "imposed at the time of a sale or lease transaction.” Fla. Stat. § 501.0117(1). As a result, surcharges not imposed for the first time at the time of the sale or lease are permitted. See United States v. Meister, 744 F.3d 1236, 1238 (11th Cir.2013) (“[A] statutory definition excludes any meaning that is not stated.”) (quotation marks omitted).

. In their reply brief, the plaintiffs contend for the first time that they are also making an as-applied challenge. But their amended complaint brings only a facial challenge, and the relief it requests is for the court to "[d]e-clare that Florida’s no-surcharge law is unconstitutional and enjoin its enforcement” generally. A complaint seeking relief that "reach[es] beyond the particular circumstances of the[] plaintiffs” must meet the standards for a facial challenge — regardless of whether the plaintiff later tries to frame it as an as-applied challenge. Am. Fed’n of State, Cty. & Mun. Emps. Council 79 v. Scott, 717 F.3d 851, 863 (11th Cir.2013) (first alteration in original) (quotation marks omitted).

.The plaintiffs also challenge the statute as unconstitutionally vague. I address that claim later. See infra Part III.

. See N.Y. Gen. Bus. Law § 518 (providing that "[n]o seller in any sales transaction may impose a surcharge on a holder who elects to use a credit card in lieu of payment by cash, check, or similar means”). The law does not define "surcharge,” so the Second Circuit gave that word its ordinary meaning. See 803 F.3d at 103.