# United States Court of Appeals
## For the First Circuit

No. 15-2088

UNITED STATES OF AMERICA,

Appellee,

v.

NELSON SANTIAGO-COLON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Lynch, Circuit Judge,
Souter,* Associate Justice,
and Kayatta, Circuit Judge.

Eric Alexander Vos, Federal Public Defender, Vivianne M. Marrero, Assistant Federal Public Defender, and Liza L. Rosado-Rodriguez, Research and Writing Specialist, on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, and Julia M. Meconiates, Assistant United States Attorney, on brief for appellee.

March 19, 2019

---

* Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**LYNCH**, **Circuit Judge**.   After a jury trial, Nelson Santiago-Colon, a pastor, was convicted of three counts of transporting a minor with intent to engage in criminal sexual activity.  18 U.S.C. § 2423(a).  On appeal, he challenges his within-guidelines sentence of forty years' imprisonment.  He argues that his sentence is procedurally unreasonable because it allegedly was based on unreliable information in his presentence report (PSR) and because the district court did not adequately consider his argument that the relevant sex offense guidelines are not supported by empirical evidence.  See U.S.S.G. § 2G1.3.  He also argues that his sentence is substantively unreasonable, as it is greater than necessary to achieve deterrence, and does not take into account his ability to rehabilitate.  We affirm.

I.

We recount only those facts necessary to understand the issues on appeal.  Santiago-Colon was the pastor of a Pentecostal church in Puerto Rico.  Between 2004 and 2011, Santiago-Colon sexually abused at least five young boys between the ages of twelve and sixteen, including over twenty incidents with one victim.

The instances of abuse followed a pattern.  Santiago-Colon met the victims and their families through the church.  He would obtain the parents' permission to drive the victims to his house and have them spend the night, under the guise of innocent activities such as his mentoring of them or their washing of the

- 2 -

church van. The visits usually started with the victims eating meals with Santiago-Colon's family, watching television, and sometimes playing with Santiago-Colon's young son. Usually, Santiago-Colon then took the victims to his bedroom, where they would sit on his bed (the only seating option) to watch television. Afterward, Santiago-Colon would send his then-wife and child out of the room if they were present (he and his then-wife had separate bedrooms). He would then sexually abuse the victims, whether they were asleep or awake.

The victims were forced to spend the night with Santiago-Colon, usually sleeping in the same bed as Santiago-Colon, before he drove the victims home the next day. Santiago-Colon also at times sexually abused the victims in other locations, including in his private car.

Santiago-Colon was able to continue his predations because he instructed the victims not to tell anyone about the sexual abuse. The victims did not tell their families about the abuse until years later; several of them explained that they were afraid of Santiago-Colon, or thought no one would believe that Santiago-Colon had abused them because he was a pastor. Santiago-Colon's former wife, who divorced him in June 2013, testified at trial that when she asked him why young boys were sleeping in his bedroom, he would respond that he was giving them "words of advice." Santiago-Colon's former wife said she believed him

- 3 -

because he was a pastor. Four of the victims, including one who was not listed in the indictment, testified at trial.

We bypass a description of the overwhelming evidence of guilt at trial to get to the sentencing issues. The PSR calculated a base offense level of twenty-eight for each of the three counts of conviction under 18 U.S.C. § 2423(a). See U.S.S.G. § 2G1.3(a). It applied three two-level enhancements: one because each minor was in the custody, care, or supervisory control of the defendant, id. § 2G1.3(b)(1)(B); one because the defendant unduly influenced a minor to engage in prohibited sexual conduct, id. § 2G1.3(b)(2)(B); and one because the offense involved the commission of a sex act or sexual contact, id. § 2G1.3(b)(4)(A).

The PSR calculated that each count had an adjusted total offense level of thirty-four, and added three additional levels because there were multiple counts, for a combined adjusted offense level of thirty-seven. The PSR also added a five-level enhancement because the defendant engaged in a pattern of activity involving prohibited sexual conduct, for a total offense level of forty-two. Id. § 4B1.5(b)(1). Santiago-Colon's criminal history category was I. The PSR determined Santiago-Colon's guideline imprisonment range to be 360 months to life.

At the sentencing hearing, Santiago-Colon requested that the court impose the statutory minimum sentence of ten years' imprisonment. The government did not provide a specific sentencing

recommendation, but argued that nothing less than ten years per victim would be appropriate.

The district court agreed with the guidelines calculations in the PSR. The court also considered the specific characteristics of the defendant, including his use of his position of trust and influence in the community. The court noted that four victims testified at trial, and that one other victim, John Doe 4, refused to testify because he "didn't want to go through the same agony to testify here." (The count in the indictment relating to John Doe 4 had been dismissed prior to trial because he did not want to testify).

The court overruled Santiago-Colon's objection to the information in the PSR about John Doe 4, stating that the information in the PSR "does not . . . mean that the defendant was convicted on such count," but that "the information is still relevant conduct as to which sufficient information was gathered, the witness was interviewed, the information was made available in discovery." The court also rejected Santiago-Colon's generalized objection that the sentence was excessive and greater than necessary, stating that Santiago-Colon had not shown any guidelines calculation error and the sentence was appropriate.

The court sentenced Santiago-Colon, then age fifty, to a term of forty years' imprisonment on each count, to be served concurrently. The court had discretion to order that the terms of

imprisonment run consecutively, but chose not to do so.  See 18 U.S.C. § 3584.  Santiago-Colon timely appealed his sentence.

## II.

"Preserved claims of sentencing error are typically reviewed for reasonableness, under an abuse of discretion rubric." United States v. Soto-Soto, 855 F.3d 445, 448 (1st Cir. 2017). "The review process is bifurcated: we first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable."  United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011).

## A.   Procedural Reasonableness

Santiago-Colon first argues that information in the PSR about John Doe 4, related to the count that was dismissed before trial, was unreliable, because there was "no official documentation in the record" about John Doe 4, who did not testify at trial and for whom there was no written declaration or police report.

There are two responses, each of which disposes of the argument.  First, the court could easily have concluded that the information was not unreliable and was relevant conduct.  In drafting the PSR's statements concerning John Doe 4, the probation officer relied on the official reports of the government's case

agent who interviewed John Doe 4 during the criminal investigation of Santiago-Colon.

Second, "[t]he defendant may object to facts in the PSR, but 'if [his] objections to the PSR are merely rhetorical and unsupported by countervailing proof, the district court is entitled to rely on the facts in the PSR.'" United States v. Prochner, 417 F.3d 54, 66 (1st Cir. 2005) (second alteration in original) (quoting United States v. Cyr, 337 F.3d 96, 100 (1st Cir. 2003)). Santiago-Colon did not provide any countervailing evidence about the challenged information. Santiago-Colon argues that the government only provided John Doe 4's initials, and would not give defense counsel John Doe 4's full name. But Santiago-Colon never asked the district court to order the government to release John Doe 4's name, and only argued that the information in the PSR about John Doe 4 was unreliable. Santiago-Colon takes the same all-or-nothing approach on appeal.[1]

Next, Santiago-Colon argues that the district court committed a Kimbrough error when it did not "adequately consider"

---

[1] Santiago-Colon's reliance on United States v. Hinkley, 803 F.3d 85 (1st Cir. 2015), is misplaced. In that case, the district court applied a five-level enhancement for a pattern of activity involving prohibited sexual contact between the defendant and a minor, based on police reports and the testimony of the agent that investigated the minor's complaint. See id. at 92. Hinkley affirmed that "[t]he sentencing court has broad discretion to accept relevant information without regard to its admissibility under the rules of evidence applicable at trial, as long as it concludes that the information has sufficient indicia of

his policy argument about the alleged lack of empirical basis for these particular guidelines. See Kimbrough v. United States, 552 U.S. 85, 109 (2007). Not so. The district court expressly stated that it had reviewed Santiago-Colon's memorandum about "the lack of empirical data for the guidelines as drafted." The court rejected the argument, which was within the court's discretion. United States v. Stone, 575 F.3d 83, 90 (1st Cir. 2009) ("[T]he district court's broad discretion obviously includes the power to agree with the guidelines.").

Further, "[e]ven though a guideline is affected by congressional adjustment, a sentencing court may rely on it." Id. at 93. As we said in Stone, "[w]e see no reason why it would be somehow invalid for a district court, in its broad sentencing discretion, to conclude that its reason for rejecting a Kimbrough variance is that it values congressional input."[2] Id.

B. Substantive Reasonableness

Santiago-Colon argues that his sentence was "in practical terms, a life sentence," and was excessive because it

---

reliability." Id. "Even conduct that did not lead to a conviction may be considered." Id. at 92-93 (citing U.S.S.G. § 4B1.5 cmt. 4(B)(ii)).

[2] Santiago-Colon argues in passing that the district court relied on Santiago-Colon's former wife's testimony that "other boys stayed at his house, insinuating that they also were victims." He argues that "[t]he record did not support the ominous meaning given to that statement." The district court stated that the victims who testified at trial were "among the individuals or youngsters that use[d] to stay at the house," and that Santiago-

did not give him an opportunity to prove to the court that he is capable of rehabilitating himself.

The district court considered the factors outlined in 18 U.S.C. § 3553(a), including Santiago-Colon's abuse of his position of trust and power in the community, the duration of the sexual abuse, the long-term harm to the victims and their families, the risk Santiago-Colon posed to society in general, the need to promote respect for the law, and the need to provide just punishment. Moreover, despite the evidence of guilt, Santiago-Colon throughout maintained he was innocent of the charges -- hardly an indication of intent to rehabilitate.

"To undermine the substantive reasonableness of a within-the-range sentence, a defendant must 'adduce fairly powerful mitigating reasons and persuade us that the district judge was unreasonable in balancing pros and cons despite the latitude implicit in saying that a sentence must be "reasonable."'" United States v. Madera-Ortiz, 637 F.3d 26, 30 (1st Cir. 2011) (quoting United States v. Navedo-Concepción, 450 F.3d 54, 59 (1st Cir. 2006). Santiago-Colon has not done so here.

Affirmed.

---

Colon's former wife stated that, "even as to these same individuals," the defendant followed the pattern of "taking the juveniles to his bedroom and at some point in time when the lights were to be turned out she was dispatched to her bedroom along with his son and no one else knew what happened." These statements are supported by the record.