# United States Court of Appeals
## For the First Circuit

No. 16-1114

UNITED STATES OF AMERICA,

Appellee,

v.

RUBÉN RODRÍGUEZ-ADORNO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Barron, Circuit Judges.

Virginia G. Villa on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, on brief for appellee.

March 29, 2017

**SELYA**, **Circuit Judge**.   Defendant-appellant Rubén Rodríguez-Adorno, represented by newly-appointed counsel, attempts to reinvent his case on appeal.  His appellate briefing is long on rhetoric and short on facts, and none of the issues that he advances was raised below.  Discerning no plain error, we affirm the challenged conviction and sentence.

## I.   BACKGROUND

We briefly rehearse the background and travel of the case, drawing the facts from the change-of-plea colloquy, the uncontested portions of the presentence investigation report (PSI Report), and the sentencing transcript.  See United States v. Dávila-González, 595 F.3d 42, 45 (1st Cir. 2010); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

For about eight years, beginning around 2002, the appellant participated in a drug-trafficking conspiracy run out of a public housing project in Carolina, Puerto Rico.  The drug ring dealt in a cornucopia of controlled substances, including crack cocaine, powder cocaine, heroin, marijuana, and assorted prescription medications.  The appellant functioned mostly as a retail seller, peddling drugs throughout the project and its environs.  At other times, he served as a lookout, standing watch while his confederates completed sales.

In May of 2010, a federal grand jury returned a six-count indictment charging 70 persons (including the appellant)

- 2 -

with a laundry list of offenses. As relevant here, count one charged the appellant and others with conspiring to possess with intent to distribute a panoply of controlled substances within a protected location. See 21 U.S.C. §§ 841(a)(1), 846, 860. Other counts charged the appellant with aiding and abetting the distribution of heroin, cocaine, and marijuana within 1,000 feet of a public housing project and with conspiring to possess a firearm and ammunition during and in relation to the commission of drug-trafficking crimes.

The appellant was not arrested until June of 2014. Roughly four months later, he entered into a written plea agreement (the Agreement), agreeing to plead guilty to count one. As part of the bargain, the government agreed to dismiss the other charges against him.

In the Agreement, the parties stipulated that the appellant possessed at least 500 grams, but less than 2,000 grams, of cocaine, notwithstanding that the drug ring was alleged to have distributed "multiple kilograms" of several different kinds of drugs. As a result, the appellant faced a statutory maximum sentence of eighty years in prison. See 21 U.S.C. §§ 841(b)(1)(B), 860(a).

The Agreement included a number of provisions bearing upon the appellant's prospective sentence (acknowledging, though, that the sentencing court was neither bound nor constrained by any

of these provisions). Of particular pertinence for present purposes, the parties suggested a total offense level of 25, but they did not stipulate to any criminal history category (CHC). Instead, they agreed that if the appellant's CHC proved to be I or II, he could argue for a sentence as low as sixty months and the government could argue for a sentence as high as seventy months. If, however, the appellant's CHC equaled or exceeded III, both parties would recommend a sentence at the low end of whatever guideline sentencing range (GSR) resulted. Regardless of what his CHC turned out to be, the appellant promised not to ask for a sentence of less than sixty months.

At the change-of-plea hearing, the court began by offering to read the charges. The appellant declined the offer, indicating that he knew the nature of the charges against him. The court nonetheless proceeded to describe the relevant charges in detail and also described the manner and means by which the appellant and his coconspirators had allegedly carried out their illicit activities. The appellant acknowledged that he had acted in the manner that the court portrayed and confirmed that he wished to plead guilty to the conspiracy count.

The court reminded the appellant that it was not bound by the Agreement but, rather, was obliged to make its own guideline calculations and could impose "any sentence provided by the law." The appellant confirmed that he understood the court's position.

In due course, the court accepted the appellant's guilty plea and ordered the preparation of the PSI Report.

When the final version of the PSI Report emerged, it identified four clusters of convictions aggregating to more than ten individual convictions, two of which the probation officer thought sufficient to serve as predicates for a career offender enhancement under the sentencing guidelines. With this in mind, the report recommended that the court set the appellant's total offense level at 31 and place him in CHC VI. These recommendations yielded a GSR of 188-235 months.

At the disposition hearing, the government urged the court to impose a 100-month term of immurement.[1] By contrast, the appellant sought a sharply variant sentence and urged the court to impose a seventy-month term of immurement. The court, after adopting the guideline calculations adumbrated in the PSI Report, sentenced the appellant to a 235-month incarcerative term — a sentence that was within, but at the top of, the GSR. In fashioning this sentence, the court considered, inter alia, the appellant's personal characteristics, health, criminal history, and the nature

---

[1] Because the Agreement did not specifically mention the career offender enhancement, the government chose not to take that enhancement into account in arriving at its sentencing recommendation. Consequently, it recommended a sentence at the low end of a hypothetical GSR, that is, a GSR calculated without regard to the appellant's career offender status.

of his participation in the offense of conviction.  This timely appeal followed.

## II.  ANALYSIS

The appellant challenges both his conviction and his sentence.  We discuss only those claims that show some slight promise and summarily reject the remainder of his asseverational array.

### A.  Conviction.

The appellant's principal plaint with respect to his conviction is that his guilty plea was not knowing and voluntary. We start our examination of this plaint with first principles: before accepting a defendant's guilty plea, a court must "inform the defendant of, and determine that [he] understands, . . . the nature of each charge."  Fed. R. Crim. P. 11(b)(1)(G); see United States v. Jones, 778 F.3d 375, 382 (1st Cir. 2015).  This obligation extends to "the charges against [the defendant] and the spectrum of possible penalties to which an admission of guilt will expose him."  United States v. Jimenez, 512 F.3d 1, 3 (1st Cir. 2007).

Seizing upon this requirement, the appellant insists that the district court twice erred at the change-of-plea hearing: when it failed to read count one of the indictment verbatim and when it failed to inform him properly about the consequences of his plea.  Because he did not raise either of these claims below,

our review is for plain error. See United States v. Vonn, 535 U.S. 55, 59 (2002). Plain error review imposes a heavy burden. Under that daunting standard, the appellant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

The appellant's first claim does not withstand even cursory inquiry: the sentencing court simply was not obliged to read the indictment verbatim. As we have noted, "Rule 11 does not require a district court either to spout a fixed catechism or to use a set of magic words." Jones, 778 F.3d at 382. By the same token, it does not require that the court explore in minute detail every nook and cranny of the charging document. See id.; United States v. Cruz-Rivera, 357 F.3d 10, 13 (1st Cir. 2004). Reading an indictment may be sufficient to inform a defendant of the charges against him, see Jones, 778 F.3d at 382, but it is by no means the only avenue through which a sentencing court can achieve that end, see United States v. Cotal-Crespo, 47 F.3d 1, 6 (1st Cir. 1995).

The appellant's more weighty claim is that the court's failure to read count one verbatim rendered him unable to "understand the scope of the offense to which he . . . plead[ed]

guilty."  At bottom, though, this claim rests on revisionist history: at the change-of-plea hearing, the appellant affirmed several times that he understood the charges and intended to plead guilty.  A defendant's admission that the allegations against him are true is ordinarily sufficient proof that he understands the charges.  See United States v. Dunfee, 821 F.3d 120, 128 (1st Cir. 2016) (noting that declarations in open court "carry a strong presumption of verity" (quoting United States v. Santiago Miranda, 654 F.3d 130, 138 (1st Cir. 2011))); United States v. Smith, 511 F.3d 77, 85 (1st Cir. 2007) (similar).

This case falls within that general rule, not within the long-odds exception to it.  The relevant inquiry on appeal focuses on the totality of the circumstances, including "the attributes of the particular defendant, the nature of the specific offense, and the complexity of the attendant circumstances."  Jones, 778 F.3d at 382 (quoting United States v. Ramos-Mejía, 721 F.3d 12, 15 (1st Cir. 2013)).  In this instance, the court informed the appellant that he was charged with conspiring to "knowingly and intentionally possess with intent to distribute controlled substances."  It then described the offense conduct in some detail (including particular methods and locations) and identified the appellant's role within the conspiracy.  The appellant confirmed his understanding of those charges.  No more was exigible to render the appellant's plea knowing and voluntary.

The appellant next contends that because neither the Agreement nor the district court mentioned in haec verba that he might be subject to the career offender enhancement,[2] he did not appreciate the consequences of his guilty plea. But this contention mixes plums with pomegranates: the fact that the appellant was not explicitly informed of the possibility of a career offender enhancement does not mean that he was not appropriately informed of the consequences of his plea. See Jimenez, 512 F.3d at 3. After all, the Agreement specifically contemplated that the appellant's CHC might be elevated and established a sentencing framework that took account of that possibility. The change-of-plea colloquy alluded to this framework and, echoing the Agreement, warned the appellant that the court would make its own guideline calculations and could impose a sentence up to the statutory maximum for the offense of conviction. These warnings were adequate. At this relatively early stage in the process (that is, at the change-of-plea stage), the court was not obligated to predict the future and "inform the defendant . . . of the exact manner in which [his] future guideline calculations may evolve." Jones, 778 F.3d at 383 (citing Fed. R.

_____

[2] The sentencing guidelines prescribe a career offender enhancement when a defendant has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." United States v. Montoya, 844 F.3d 63, 72 (1st Cir. 2016) (quoting USSG §4B1.1(a)). The enhancement serves both to increase a defendant's offense level and to elevate his CHC. See USSG §4B1.1(b).

Crim. P. 11 advisory committee's note (1989 amendment) (discussing same)). "Any other rule would put the cart before the horse, requiring the court to get the functional equivalent of a full [PSI Report] before it could accept a guilty plea." Id.

The appellant's final conviction-related claim has a patina of plausibility. He points out that the court recited an incorrect statutory maximum at the change-of-plea hearing. See Fed. R. Crim. P. 11(b)(1)(H) (requiring court to notify defendant of "any maximum possible penalty" that he faces). The error itself is patent: at the change-of-plea hearing, the court told the appellant that he faced a maximum possible sentence of forty years when, in fact, he faced a maximum possible sentence of eighty years. See 21 U.S.C. §§ 841(b)(1)(B), 860(a).

Although this error satisfies the first two elements of the plain error test, it nonetheless falters at the third step: the appellant has not shown that the error affected his substantial rights. To make such a showing in this context, a defendant must identify "a reasonable probability that but for some error, he would not have pleaded guilty." United States v. Ocasio-Cancel, 727 F.3d 85, 89 (1st Cir. 2013) (citing, inter alia, United States v. Davila, 133 S. Ct. 2139, 2147 (2013)). The appellant makes no such argument, much less the requisite showing. At any rate, the Agreement accurately stated the eighty-year statutory maximum for the offense of conviction; and there is nothing in the record to

- 10 -

suggest that the appellant — who was negotiating with the government for a sentence well below the statutory maximum — was influenced unfairly by the district court's slip of the tongue.[3] See United States v. Romero-Galindez, 782 F.3d 63, 67-68 (1st Cir. 2015) (applying similar logic to hold that misstatement of term of supervised release did not affect validity of defendant's plea).

To say more about the appellant's challenges to his conviction would be to paint the lily. After examining all of the appellant's arguments in this regard, it is readily apparent that plain error is plainly absent.

## B. <u>Sentence</u>.

The appellant's sentence-related arguments are no more substantial. His briefing is muddled, and it is often unclear whether he attempts to tie his claims to alleged procedural bevues underlying his sentence or to its purported lack of substantive reasonableness. In an abundance of caution, we address both aspects.

In general, sentencing claims are addressed under a two-step pavane. See United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). First, we address those claims that affect the procedural integrity of the sentence. See id. Second, we address

---

[3] We note that the PSI Report stated the correct statutory maximum, and the appellant expressed no surprise upon receipt. Nor did he seek to withdraw his guilty plea.

- 11 -

any residual question as to the substantive reasonableness of the sentence. See id.

In this case, the appellant accuses the district court of neglecting to give proper consideration to the factors enumerated in 18 U.S.C. § 3553(a). Specifically, he contends that the court did not mull the nature and circumstances of the offense of conviction, his history and characteristics, and the need to avoid unwarranted sentencing disparity. These contentions lack any semblance of force.

As a threshold matter, the standard of review looms as a formidable obstacle. The appellant did not raise any such claims below and, thus, appellate review is for plain error. See Jimenez, 512 F.3d at 3; Duarte, 246 F.3d at 60.

Here, moreover, the court stated at the disposition hearing that it had "taken into consideration all of the . . . 3553 factors." This statement itself is entitled to some weight, see Dávila-González, 595 F.3d at 49, and the appellant points to nothing in the record that serves to suggest the contrary.

In any event, a sentencing court has broad discretion to weigh and balance the section 3553(a) factors. See United States v. Flores-Machicote, 706 F.3d 16, 23 (1st Cir. 2013). The court may treat those factors as a whole: "it is not required to address those factors, one by one, in some sort of rote incantation when

explicating its sentencing decision." United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006).

Against this backdrop, we turn to the appellant's more particularized plaints. To begin, his suggestion that the sentencing court misperceived the nature and circumstances of the crime is woven out of whole cloth. While he claims that the court did not understand the "exact nature" of his participation in the conspiracy and, therefore, could not tailor a sentence to his role in the offense, the record belies this claim. At sentencing, the court recounted many pertinent details of the offense, including the appellant's service as a seller, and his admission that he had handled between 500 and 2,000 grams of crack cocaine in the course of the enterprise. Seen in this light, the suggestion that the court did not understand the nature and circumstances of the offense appears groundless.

Relatedly, the appellant claims that the court misconstrued statements in the PSI Report regarding his history and characteristics, causing the court to give his difficult family circumstances and struggles with addiction short shrift. This claim, too, strains credulity. The record reflects that the court, before pronouncing sentence, paid specific heed to the appellant's family circumstances, history of substance abuse, and health, and factored those considerations into its sentencing calculus. The appellant's remonstrance, then, boils down to nothing more than a

- 13 -

contention that the court did not give potentially mitigating factors, such as the appellant's history and characteristics, the weight that the appellant would have liked. We have stated, with a regularity bordering on the monotonous, that such qualitative judgments fall comfortably within a sentencing court's purview. See, e.g., United States v. Bermúdez-Meléndez, 827 F.3d 160, 165 (1st Cir. 2016); Flores-Machicote, 706 F.3d at 23. Accordingly, the appellant's quarrel with this aspect of the sentencing court's rationale falls short of a showing of error (plain or otherwise).

The appellant's claim of sentencing disparity is equally unpersuasive. Refined to bare essence, his argument is that the court failed to consider that many of his codefendants received lesser sentences. This oversight, he says, transgressed the congressional directive to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). This claim is doubly flawed.

For one thing, when Congress enacted section 3553(a)(6), it was concerned "mainly with minimization of disparities among defendants nationally rather than with disparities among codefendants engaged in a common conspiracy."[4] United States v.

_____

[4] To be sure, the appellant makes a passing suggestion in his reply brief that his sentence is greater "than the majority of defendants convicted of drug offenses who are Career Offenders." This suggestion, though, is both conclusory and undeveloped. At

- 14 -

<u>Floyd</u>, 740 F.3d 22, 39 (1st Cir. 2014) (quoting <u>United States</u> v. <u>Vargas</u>, 560 F.3d 45, 52 (1st Cir. 2009)).

For another thing, the appellant has not shown that any of his proposed comparators — an undefined subset of his coconspirators — were similarly situated to him. Although his brief contains a barebones list of the various coconspirators and their sentences, the appellant comments upon only one particular coconspirator — a coconspirator who allegedly played a more significant role in the conspiracy but received a lesser sentence. However, he presents no information about this coconspirator's specific criminal involvement, his criminal history, his career offender status, or his cooperation (if any) with the government.

A credible claim of sentencing disparity requires that the proponent furnish the court with enough relevant information to permit a determination that he and his proposed comparators are similarly situated. <u>See</u> <u>United States</u> v. <u>Reyes-Santiago</u>, 804 F.3d 453, 467 (1st Cir. 2015). That information must enable the court to "compare apples to apples." <u>Id.</u> Here, however, the appellant utterly failed to lay any foundation on which to build a claim of sentencing disparity. <u>See</u> <u>United States</u> v. <u>Demers</u>, 842 F.3d 8, 15 (1st Cir. 2016).

---

any rate, the appellant does not make any effort to show that the offenders to whom this suggestion refers were similarly situated.

- 15 -

Finally, we address the appellant's somewhat amorphous claim that his sentence is substantively unreasonable.[5] The "linchpin" of substantive reasonableness review is an assessment of whether the sentencing court supplied a "plausible sentencing rationale" and reached a "defensible result." Martin, 520 F.3d at 96. In the course of such a review, an appellate court is generally not at liberty to second-guess a sentencing court's reasoned judgments. See United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011). After all, there is typically not a single reasonable sentence but, rather, a broad range of reasonable sentences that can apply in any given case. See Martin, 520 F.3d at 92.

Even though the appellant did not raise this claim below, we assume — favorably to the appellant — that our review is for abuse of discretion. See United States v. Pérez, 819 F.3d 541, 547 (1st Cir.), cert. denied, 137 S. Ct. 111 (2016); United States v. Ruiz-Huertas, 792 F.3d 223, 228 & n.4 (1st Cir.), cert. denied, 136 S. Ct. 258 (2015). We discern none here.

Before imposing sentence, the district court recounted the appellant's extensive criminal history, which included a number of violent crimes, specific threats to individuals, and weapons offenses.[6] The court observed that, even though the

_____

[5] To the extent (if at all) that this claim depends upon the appellant's plaint about sentencing disparity, it fails for the reasons previously stated.

[6] The appellant takes umbrage at the district court's description of several of his prior offenses. Although the court's

- 16 -

defendant had been convicted of and served time for several offenses, he continued to engage in criminal conduct. Consequently, the court levied a sentence at the high end of the GSR to protect the public, deter the appellant, and provide condign punishment. This was doubtless a plausible sentencing rationale.

So, too, the court reached a defensible result. Within-guidelines sentences are entitled to a presumption of reasonableness, see Rita v. United States, 551 U.S. 338, 347 (2007), and a defendant who seeks to challenge such a sentence bears a heavy burden, see United States v. Pelletier, 469 F.3d 194, 204 (1st Cir. 2006). The appellant has not carried that burden: the nature of his crime, combined with his extensive criminal history, made it reasonable for the court to look to the upper reaches of the GSR. The sentence imposed, though stiff, is within the wide universe of substantively reasonable sentences.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the appellant's conviction and sentence are

**Affirmed.**

---

language could have been more precise, any misconception about the peripheral details about which the appellant complains was not central to its analysis. Hence, any error in this regard was harmless.