# United States Court of Appeals
## For the First Circuit

No. 18-1595

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS ABREU-GARCÍA, a/k/a Jorge Mejias-García, a/k/a Adalberto
Kotts-Pérez, a/k/a Adalberto Pérez,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Irma R. Valldejuli on brief for appellant.
David C. Bornstein, Assistant United States Attorney, Rosa
Emilia Rodríguez-Vélez, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division, on brief for appellee.

July 31, 2019

**LYNCH**, **Circuit Judge**.   This is a sentencing appeal. After two previous deportations, Carlos Abreu-García pleaded guilty to reentering the United States illegally as a removed alien.  8 U.S.C. § 1326(b)(2).  He was given a mid-range sentence of forty months of imprisonment and three years of supervised release.   Abreu now challenges the procedural and substantive reasonableness of his sentence.  Finding no error, we affirm his sentence.

I.

A.   Facts

Since Abreu pleaded guilty, we draw the facts from the plea agreement, the presentence investigation report (PSR), and the sentencing hearing transcript.  See United States v. Colón-Rosario, 921 F.3d 306, 309 (1st Cir. 2019).  Abreu was born and raised in the Dominican Republic.  In 2005, at the age of twenty-eight, Abreu entered the United States on a tourist visa and stayed after the visa expired.  Between 2005 and 2013, Abreu lived in Boston, Massachusetts; the Bronx, New York; and Allentown, Pennsylvania.  Abreu's wife and daughter, as well as his wife's son from a previous relationship, live in Boston.  Abreu also has a daughter from another relationship who lives in the Bronx.

On January 1, 2014, Abreu was convicted of possession of a controlled substance (heroin).  When arrested, he had provided the false name "Adalberto Kotts-Pérez."  Abreu was sentenced to

four years' imprisonment and five years' post-release supervision. On August 21, 2014, an immigration judge ordered Abreu removed from the United States, and he was removed to the Dominican Republic on July 21, 2015.

On August 21, 2016, Abreu was apprehended by United States Border Patrol near Miami, Florida. Abreu was then convicted of illegally reentering the United States, 8 U.S.C. §§ 1326(a), (b)(1), and sentenced to ten months' imprisonment and three years' supervised release. Abreu was again deported to the Dominican Republic on July 5, 2017.

In or about October 2017, Abreu reentered the United States by boat, landing on an unknown beach in Puerto Rico. On November 22, 2017, he was apprehended at the airport in San Juan, Puerto Rico, while attempting to board a flight to New York City. Abreu presented the officials with a false driver's license with the name "Jorge Mejias-García." After learning that Abreu had entered the United States illegally after two previous deportations, the agents arrested him.

B. Procedural History

On February 27, 2018, Abreu pleaded guilty to reentering the United States illegally as a removed alien, 8 U.S.C. § 1326(b)(2). In the plea agreement, the parties stipulated that Abreu's base offense level was eight. The plea agreement stipulated to an eight-level enhancement for a prior felony

- 3 -

conviction, a four-level enhancement for a felony conviction that is an illegal reentry offense, and a three-level reduction for timely acceptance of responsibility, for a total offense level of seventeen. The parties jointly recommended a sentence of thirty months' imprisonment "irrespective of the applied sentencing guideline range or [Abreu's] criminal history category at the time of sentencing."

The PSR calculated a total offense level of seventeen and a criminal history category of IV. The criminal history category was based on a score of seven, which included two points under U.S.S.G. § 4A1.1(d) because Abreu committed the offense while on supervised release. The PSR stated that the guideline sentencing range was thirty-seven to forty-six months. The maximum term of imprisonment for the offense is twenty years, and there is no mandatory minimum term. 8 U.S.C. § 1326(b)(2).

At the sentencing hearing, Abreu urged the district court to accept the recommended sentence, which he acknowledged was below the applicable guideline range, on the ground that Abreu had reentered the country to be with his family. Abreu also argued that it would be "unfair" if he received a longer sentence because of the "high probability" that he would also receive a consecutive revocation sentence for violating the conditions of his supervised release term.

The district court agreed with the PSR's guideline calculation. The court stated that it "considered the other sentencing factors" in 18 U.S.C. § 3553(a). The court specifically noted that Abreu had twice before been deported, had entered the country illegally, had used false identification to travel on a commercial flight, and had entered the United States in violation of the conditions of his supervised release. The district court stated that it "consider[ed] a sentence at the midrange of the guideline range to reflect the seriousness of the offense, promote[] respect for the law, protect[] the public from further crimes by Mr. Abreu, and address[] the issues of deterrence and punishment." The district court sentenced Abreu to forty months' imprisonment, followed by a supervised release term of three years.

After the court imposed the sentence, defense counsel "request[ed] that the Court reduce [Abreu's] sentence to 30 months" because "what led this Defendant to come to Puerto Rico" was that "he wanted to be with his children." The district court denied the request, and defense counsel made no further objections. Abreu timely appealed.

II.

"In sentencing appeals, appellate review is bifurcated." United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). "[W]e first determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively

- 5 -

reasonable."  Id. (quoting United States v. Clogston, 662 F.3d 588, 590 (1st Cir. 2011)).

A.   Procedural Reasonableness

Abreu argues for the first time on appeal that the district court abused its discretion in raising his criminal history score by two points (for committing the instant offense while on supervised release) on the ground that the sentencing guidelines are "no longer mandatory but are only advisory."  He argues the district court was "not obliged" to follow U.S.S.G. § 4A1.1(d) when calculating his criminal history category.  We review unpreserved claims of procedural unreasonableness for plain error.  United States v. Arroyo-Maldonado, 791 F.3d 193, 197 (1st Cir. 2015).

There was no error, plain or otherwise.  It is ordinarily true that although the guidelines are "no longer binding, . . . [j]udges still must start out by calculating the proper Guidelines range" before determining whether to "differ from the Sentencing Commission's recommendations."  United States v. Rodriguez, 630 F.3d 39, 41 (1st Cir. 2010).  "The reason for this is simple . . . . [S]tarting with the Guidelines' framework -- which gives judges an idea of the sentences imposed on equivalent offenders elsewhere -- helps promote uniformity and fairness."  Id. (citations omitted).  Here, Abreu does not dispute that he committed the instant offense while on supervised release.

U.S.S.G. § 4A1.1(d) states: "Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." The district court correctly treated the properly calculated guideline sentencing range as the starting point in determining Abreu's sentence.[1]

To the extent Abreu is arguing that the district court believed it lacked discretion to vary from the guidelines because it erroneously believed they are still mandatory, there is no

---

[1] Abreu also states in passing that the district court's decision to raise his criminal history score two points for committing the offense while on supervised release constitutes "double counting," because Abreu was also likely to receive a consecutive revocation sentence for violating the terms of his supervised release. He has not developed this argument, so it is waived. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Moreover, "[d]ouble counting concerns usually involve the use of a single factor more than once to calculate the Guidelines sentencing range," which is not what happened here. United States v. Maisonet-González, 785 F.3d 757, 764 (1st Cir. 2015); cf. United States v. Gondek, 65 F.3d 1, 4 (1st Cir. 1995), superseded on other grounds as recognized in United States v. Crudup, 375 F.3d 5 (1st Cir. 2004) (describing a similar argument as "a form of double counting" and rejecting it because "forms of double counting are not unusual under the guidelines and are permissible where intended, as we think is the case here" (citation omitted)). And, even assuming that this is double counting, it is not impermissible double counting. See United States v. Zapata, 1 F.3d 46, 47 (1st Cir. 1993) ("In the sentencing context, double counting is a phenomenon that is less sinister than the name implies. The practice is often perfectly proper."); see also Gondek, 65 F.3d at 4. "[W]hen neither an explicit prohibition against double counting nor a compelling basis for implying such a prohibition exists, courts should be reluctant to read in a prohibition where there is none." United States v. Brake, 904 F.3d 97, 100 (1st Cir.), cert. denied, 139 S. Ct. 577 (2018) (quoting United States v. Chiaradio, 684 F.3d 265, 283 (1st Cir. 2012)).

support for that in the record.  See Kimbrough v. United States, 552 U.S. 85, 108-10 (2007).  The fact that the district court chose not to vary from the guidelines does not show that it believed it could not vary from the guidelines.  See United States v. Vega-Salgado, 769 F.3d 100, 104 (1st Cir. 2014) ("That the guidelines are advisory is, by now, a basic tenet of federal criminal sentencing.  We presume that federal judges know the law, and a reviewing court should not lightly assume that a lower court is either ignorant of or has forgotten an abecedarian principle.").

Abreu also argues that the district court "rejected the parties['] recommendation without explanation."  While "a sentencing court has a duty to explain its choice of a particular sentence," there is "no corollary duty to explain why it eschewed other suggested sentences."  Id. at 103-04.  The district court did explain the basis for the sentence, stating, among other things, that Abreu had twice before been deported, had attempted to use false identification, and had entered the United States in violation of the conditions of his supervised release.  No more was necessary.

B.  Substantive Reasonableness

Abreu argues that "the District Court did not give any weight" to the fact that Abreu reentered the United States to see his family and that Abreu was likely to receive a consecutive revocation sentence for violating the conditions of his supervised

release.  We interpret this as a challenge to the substantive reasonableness of his sentence and assume, favorably to Abreu, that abuse-of-discretion review applies.  See United States v. Rodríguez-Reyes, 925 F.3d 558, 569 (1st Cir. 2019).

The district court's decision "not to attach to certain of the mitigating factors the significance that the appellant thinks [he] deserved does not make the sentence unreasonable." Clogston, 662 F.3d at 593.  A sentence is substantively reasonable when, as here, the sentencing court gave a "'plausible sentencing rationale' and reached a 'defensible result.'"  United States v. Rodríguez-Adorno, 852 F.3d 168, 177 (1st Cir. 2017) (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)).

*     *     *

Affirmed.