# United States Court of Appeals
## For the Eighth Circuit
_____

No. 18-2017
_____

United States of America

*Plaintiff - Appellee*

v.

Rico V. Gilliam

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: April 17, 2019
Filed: August 20, 2019
_____

Before SMITH, Chief Judge, KELLY and KOBES, Circuit Judges.
_____

SMITH, Chief Judge.

Rico Gilliam was convicted by a jury on two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and sentenced to two consecutive 90-month imprisonment terms. On appeal, he argues four points: that he was charged with multiplicitous crimes in error, that prejudicial hearsay was admitted at trial, that his criminal history category was miscalculated,

and that a prior Missouri second-degree robbery conviction should not have counted as a crime of violence when calculating his Guidelines base offense level. Finding no error, we affirm the district court.[1]

## I. *Background*

On October 17, 2014, near midnight, Harding "Pops" Jeffrey called Gilliam to his residence. Jeffrey called Gilliam because he was concerned for his own safety following the angry departure—and likely return—of an intoxicated Joe Scrivo. Carla Offield was also present at Jeffrey's apartment. Scrivo returned and began arguing with Gilliam. Gilliam drew a .40 caliber Glock Model 23 from his waistband and fired three times. The third shot hit Scrivo in the leg. Scrivo left, reported the incident to the police, and told them that Gilliam shot him.

After shooting Scrivo, Gilliam fled Jeffrey's residence but left the gun there. Witness accounts differ, but apparently Gilliam either threw the gun on the couch or handed it to Jeffrey before he left. Afterward, Jeffrey picked up the shell casings he could find and then took the gun to Donna Bailey's apartment, known by acquaintances as "the funny farm."[2] Trial Tr., Vol I., at 60, *United States v. Gilliam*, No. 4:15-cr-00354-BP (W.D. Mo. May 22, 2018), ECF No. 78. Police investigating the disturbance at Jeffrey's residence found a .40 caliber shell casing that had been fired from the gun.

---

[1]The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri.

[2]Gilliam argues in his brief that parts of the record support the possibility that Gilliam left with Jeffrey and the gun, and that Jeffrey took both him and the gun to the Bailey's apartment. But this contention was a misstatement by the prosecutor in closing argument at trial; the record and testimony reflect that Gilliam left, alone and to an unknown destination, after leaving the gun.

On November 6, 2014, a confidential informant relayed to Kansas City, Missouri Police Detective Brandon Bray that Gilliam, now with an outstanding arrest warrant, was staying at Bailey's apartment. Detective Bray began watching the apartment and confirmed Gilliam's presence. Detective Bray knocked at the apartment door and spoke to Bailey. Bailey acknowledged that Gilliam was inside the apartment and that he had a gun. Detective Bray then instructed everyone to leave. Gilliam refused. Because of Gilliam's refusal, Detective Bray called for tactical backup and directed that a downstairs apartment be evacuated for occupant safety. The apartment's occupants reported to Detective Bray that Gilliam had a gun. About 30 minutes later, Gilliam voluntarily came out of the apartment and surrendered. He was unarmed and coated with drywall and insulation.

Bailey consented to a search of her apartment. Once inside, law enforcement observed a hole in the ceiling in one room, next to the attic access. It appeared as though someone had fallen through the ceiling. Officers observed a pile of clothes coated in drywall dust beneath the hole. Bailey told officers the ceiling had no hole before she left the apartment. In the attic, officers found a handgun—the same handgun used to shoot Scrivo—underneath some insulation.

After his arrest, Gilliam admitted to shooting Scrivo at Jeffrey's house but denied possessing the handgun after he gave it to Jeffrey. Gilliam was charged with two counts of being a felon in possession of a firearm for the shooting at Jeffrey's house and for possessing the weapon again at Bailey's apartment. While in prison awaiting trial, Gilliam spoke to April Calvillo. The call was recorded. Gilliam instructed Calvillo to write a letter to the prosecutor explaining that she hid the gun in the attic at Bailey's apartment two days before Gilliam's arrest. Calvillo did as directed.

At trial, Detective Bray testified on direct examination about evacuating the neighbors below Bailey's apartment as a precaution in case of gunfire in the building.

Without a question from the prosecution, Detective Bray volunteered that he "was also advised by people inside that place that [Gilliam] had a gun possibly on him." Trial Tr., Vol. II, at 14, *United States v. Gilliam*, No. 4:15-cr-354-BP (W.D. Mo. May 22, 2018), ECF No. 79. Gilliam objected to the hearsay. The court overruled Gilliam's objection. The court agreed with Gilliam that the response was hearsay, but it determined the statement was unintentional and not so prejudicial that an instruction to the jury to disregard it was necessary.

At the conclusion of trial, the jury found Gilliam guilty of both counts. At sentencing, after hearing objections, the district court adopted the presentence investigation report (PSR) and its recommended total offense level of 30. This calculation was based in part on Gilliam having two prior crime-of-violence convictions. The district court sentenced Gilliam to a total of 180 months' imprisonment.

## II. *Discussion*

Gilliam appeals the judgment and the sentence. He argues that the district court (1) plainly erred by not merging his firearm possession counts; (2) erred by admitting Detective Bray's hearsay concerning the neighbors' statements that Gilliam had a gun; (3) miscalculated Gilliam's criminal history score, resulting in a higher sentence; and (4) miscalculated Gilliam's Guidelines base offense level because one of his prior convictions was not a crime of violence.

### A. *Multiplicity*

Gilliam first argues that the district court plainly erred by not merging the two firearm possession counts into a single count. Gilliam can prevail on this argument if he shows either (1) that he did not possess the firearm at Bailey's apartment, or (2) that even if he did possess the gun, his possession had been continuous from the time he shot Scrivo at Jeffrey's apartment. *See United States v. Woolsey*, 759 F.3d 905, 908 (8th Cir. 2014). We review only for plain error because Gilliam raises this

-4-

argument for the first time on appeal.[3] *See id*. at 907. Gilliam must prove under plain error review "that the district court committed an error that is plain, *i.e.*, clear under current law, that he was prejudiced by the error, and that the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Delgado*, 653 F.3d 729, 735 (8th Cir. 2011).

### 1. *Two Dates of Possession*

Gilliam argues that the government failed to prove two separate possessions. "[W]here the prosecution seeks more than one charge under section 922(g), separate acquisition and storage of the weapons is an element of the crimes charged." *Woolsey*, 759 F.3d at 908 (internal quotation omitted). Gilliam admits to possessing the gun at Jeffrey's apartment, but he asserts that the government did not produce enough evidence at trial to support a finding that he possessed the gun at Bailey's apartment. He contends that firearm possession ended after he shot Scrivo and left the gun at Jeffrey's apartment.

The government presented sufficient evidence from which a reasonable jury could find that Gilliam possessed the gun at Bailey's apartment. The evidence is circumstantial but nonetheless convincing. "Evidence that [Gilliam] used the firearm previously is highly probative of his ownership or subsequent control over it." *United States v. Battle*, 774 F.3d 504, 511 (8th Cir. 2014). When Detective Bray asked Bailey if Gilliam had a gun, she said that he did. When Gilliam eventually surrendered by

---

[3]The government argues that Gilliam has waived this claim because Federal Rule of Criminal Procedure 12(b)(3) requires that a motion based on multiplicity be sought before trial if "the motion can be determined without a trial on the merits." Here, the motion would not have been proper because it was bound up in facts that required jury determination; therefore, Gilliam did not waive his claim by not making the Rule 12 motion prior to trial. *See United States v. Turner*, 842 F.3d 602, 604 (8th Cir. 2016) ("A motion is capable of pretrial determination if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the motion." (internal quotation omitted)).

coming out of the apartment, he had drywall dust and insulation on him. This evidence strongly links him to the previously nonexistent hole in the drywall ceiling and the insulation pile in the attic under which the gun was found. Additionally, the government introduced Gilliam's phone call to Calvillo from jail, in which he instructed Calvillo to take responsibility for possessing the gun. A reasonable jury could have concluded Gilliam possessed the gun while at Bailey's apartment.

### 2. *Continuous Possession*

Gilliam's alternative argument is that even if he possessed the gun on two occasions, the government never proved that his possession of the firearm was broken. He contends the government proved only that he possessed the firearm one time until his arrest because he kept continuous possession. "[T]he continuous possession of the same firearm constitutes a single offense." *United States v. Jones*, 403 F.3d 604, 606 (8th Cir. 2005). If Gilliam was in continuous possession of the gun, he can only be subjected to one count. *See id*.

Possession "may be actual or constructive." *Id*. In this case, Gilliam did not have actual continuous possession because he surrendered physical control when he placed the gun in Jeffrey's care after shooting Scrivo. *Cf. id*. (stating that officer taking gun from defendant to check its ownership "may have caused [the defendant] to lose actual possession of the weapon").

Constructive possession means that a person "has ownership, dominion or control over the [firearm] itself, *or dominion over the premises in which the* [firearm] *is concealed*." *United States v. Brett*, 872 F.2d 1365, 1369 (8th Cir. 1989) (internal quotation omitted). To succeed, therefore, Gilliam must show that he somehow maintained "ownership, dominion or control" over the firearm during the entirety of events in this case. *See id*.

Gilliam has made no such showing. When he left Jeffrey's apartment, he gave no instruction for the gun's transport or disposition. There are no facts in the record to demonstrate that Gilliam knew where the gun would be after leaving Jeffrey's apartment or controlled how it would arrive to any new location. *See, e.g.*, *United States v. Ellis*, 622 F.3d 784, 794 (7th Cir. 2010) (intentionally directing the actions of a person with physical possession of a known firearm constitutes constructive possession of the firearm). Gilliam essentially asserts that the lack of evidence about what the gun was doing during the interim of its two appearances means that the government failed to establish a definitive break in possession. The evidence places Gilliam in possession of the same firearm in different locations and on different days with the weapon in someone else's (Jeffrey's) exclusive possession for at least some period of time in the interim. There are no contrary facts, only Gilliam's phone call seeking false testimony from a friend about the weapon's possession. Gilliam did not constructively possess the firearm after leaving it at Jeffrey's because he had no dominion over Jeffrey's apartment. Gilliam also had no dominion over Bailey's apartment. No evidence in the record suggests otherwise. The district court did not commit plain error by not merging his firearm possession counts.[4]

## B. *Hearsay*

Gilliam's second point on appeal is that the district court erred by refusing to instruct the jury to disregard Detective Bray's testimony that the occupants of a neighboring apartment also commented about Gilliam's gun possession. The prosecutor questioned Detective Bray about whether, before the tactical squad arrived, he had "contact[ed] any residents of any other apartments?" Trial Tr., Vol. II, at 14. Detective Bray responded that he "was also advised by people inside [the downstairs apartment] that [Gilliam] had a gun possibly on him." *Id.*

---

[4]Gilliam does not challenge the district court's failure to instruct the jury on multiplicity, and therefore we express no opinion on the issue.

Gilliam objected to the statement on hearsay grounds. The district court agreed with the hearsay assessment, but it declined to tell the jury to disregard the statement, saying, "I don't think it's gotten to that point yet." *Id*. at 15. "This court reviews a district court's evidentiary rulings for abuse of discretion." *United States v. DeMarce*, 564 F.3d 989, 995 (8th Cir. 2009).

According to Rule 801(c) of the Federal Rules of Evidence, "'hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Detective Bray's testimony meets this definition of hearsay. The record does not show that it was admitted under any exception to Rule 801.

Because no hearsay exception applies, the district court abused its discretion in declining to tell the jury to disregard the statement. *See DeMarce*, 564 F.3d at 997. But we "will not reverse an erroneous evidentiary ruling if the error was harmless." *Id*. (internal quotation omitted). "An evidentiary error is harmless when, after reviewing the entire record, this court determines that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." *Id*. "[I]mproper admission of evidence which is cumulative of matters shown by admissible evidence is harmless error." *United States v. King*, 898 F.3d 797, 807 (8th Cir. 2018) (internal quotation omitted).

The government presented several other significant pieces of evidence to demonstrate that Gilliam possessed the firearm at Bailey's apartment. *See supra* Section II.A.1. The downstairs neighbors' statements about Gilliam having the gun were therefore cumulative and not so prejudicial as to affect Gilliam's substantial rights. *See King*, 898 F.3d at 806–07. The testimony's admission was harmless error.

C. *Criminal History Calculation*

1. *Crime-of-Violence Criminal History Point*

Third, Gilliam argues that the district court erred at sentencing when calculating his criminal history score. We review the district court's calculation only for plain error because Gilliam did not object to the calculation. *See Woolsey*, 759 F.3d at 907. Gilliam carries the burden to prove the error was prejudicial to him and that there is "a 'reasonable probability' that the district court would have imposed a more favorable sentence" but for the calculation error. *United States v. Pirani*, 406 F.3d 543, 547 (8th Cir. 2005) (en banc).

The PSR assigned Gilliam a criminal history score of 13. Among these points, Gilliam received four criminal history points based on four prior Missouri convictions stemming from his arrest on July 4, 2002. These convictions included: (1) first-degree burglary (ten years' imprisonment); (2) armed criminal action relating to the burglary (three years' imprisonment); (3) attempted first-degree robbery (ten years' imprisonment); and (4) armed criminal action relating to the robbery (three years' imprisonment). Gilliam's sentences ran concurrently. The PSR cited U.S.S.G. §§ 4A1.1(a) and 4A1.1(e) in support of the four criminal history points; however, the PSR did not state which convictions received the designated points. The district court adopted the PSR without modification.

Section 4A1.1(a) provides that three criminal history points must be added "for each prior sentence of imprisonment exceeding one year and one month." Gilliam does not challenge that the sentences he received for his four prior Missouri convictions should be treated as a single "prior sentence." *See* U.S.S.G. § 4A1.2(a)(2). Because Gilliam's "prior sentences are treated as a single sentence" under § 4A1.1(a), the court is directed to "use the longest sentence of imprisonment if concurrent sentences were imposed." *Id.* In this case, both Gilliam's first-degree burglary and attempted first-degree robbery convictions carried ten-year sentences—"the longest sentence of imprisonment" that Gilliam received. *See id*. The

PSR, however, does not state whether it attributed the three criminal history points to the first-degree burglary sentence or the attempted first-degree robbery sentence.

Gilliam now claims that the district court erred by including a fourth criminal history point for this single "prior sentence." Section 4A1.1(e) provides that one criminal history point is added "for each prior sentence resulting from a conviction of a *crime of violence* that did not receive any points under [§ 4A1.1(a)] . . . because such sentence was treated as a single sentence." (Emphasis added.)[5] Gilliam's conviction for attempted first-degree robbery qualifies as a crime of violence. *See United States v. Shine*, 910 F.3d 1061, 1063 (8th Cir. 2018) (holding defendant's prior Missouri conviction of attempted first-degree robbery was a "crime of violence" under U.S.S.G. § 4B1.2(a)).

Gilliam presumes that the fourth point was applied to his conviction for armed criminal action, which he argues does not qualify as a crime of violence. However, it is equally likely that the PSR attributed the first three points under § 4A1.1(a) to Gilliam's first-degree burglary conviction and attributed the fourth point to his attempted first-degree robbery conviction. The PSR does not state either way. Because the contested fourth point could be added for the first-degree robbery conviction, Gilliam has not shown that there was an error, much less one that is plain.

## 2. *Second Degree Robbery*

Lastly, Gilliam challenges the district court's conclusion that his conviction for second-degree robbery in Missouri qualifies as a crime of violence. Our decision in *United States v. Swopes*, 886 F.3d 668 (8th Cir. 2018) (en banc), forecloses this argument. In *Swopes*, we held that Missouri second-degree robbery constitutes a crime of violence. *Id*. at 672.

---

[5]"For purposes of this guideline, 'crime of violence' has the meaning given that term in § 4B1.2(a)." *Id*. § 4A1.1 cmt. n.5.

-10-

## III. *Conclusion*

For the foregoing reasons, we affirm the judgment of the district court. Gilliam has not shown that the district court erred by failing to merge his counts for possession, in calculating his criminal history score, or accepting that his prior second-degree Missouri robbery was a crime of violence. And any error Gilliam has shown regarding the admission of hearsay at trial was harmless.

_____