# United States Court of Appeals
## For the First Circuit

No. 18-1795

UNITED STATES OF AMERICA,

Appellee,

v.

DERRICK A. COFFIN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Hunter J. Tzovarras for appellant.
Benjamin M. Block, Assistant United States Attorney, with
whom Halsey B. Frank, United States Attorney, was on brief, for
appellee.

December 20, 2019

**LYNCH**, **Circuit Judge**.  Derrick Coffin pled guilty to one count of possession of child pornography and one count of accessing child pornography with intent to view, both in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).  The district court sentenced Coffin to the statutory maximum sentence of 240 months' imprisonment on each count, to be served concurrently.

On appeal, Coffin challenges his sentence on procedural and substantive grounds, focusing on the enhancements given for a pattern of activity involving the sexual abuse of minors and for obstruction of justice, and the denial of an acceptance of responsibility reduction.  We find no error.

He also argues his Criminal History Category (CHC) was miscalculated.  We do not resolve that argument and request that the Sentencing Commission address the lack of clarity as to how criminal history points should be allocated when multiple prior sentences imposed on the same day are for the same length of time, and only one of those sentences constitutes a "crime of violence." We do not resolve the CHC issue because the district court explained why even if it had erred as to the CHC calculation, it would upwardly depart to impose the same category.  And an upward departure was plainly reasonable.

I.

As this sentencing appeal follows Coffin's guilty plea, "we draw the facts from the plea agreement, the presentence

investigation report (PSR), and the sentencing hearing transcript." United States v. Montalvo-Febus, 930 F.3d 30, 32 (1st Cir. 2019).

A.   Facts

In March 2016, Coffin was on probation from a Maine sexual assault conviction in 2006. Coffin's probation conditions for his 2006 conviction for gross sexual assault made his person, residence, vehicles, and electronic equipment subject to random searches and prohibited him from possessing child pornography images. On March 18, 2016, law enforcement officers conducted a search of Coffin's residence after he appeared to be violating probation conditions. He had been observed watching a video on his cell phone that appeared to depict the sexual abuse of an infant. Law enforcement officers seized a laptop computer, a cell phone, and a digital memory card from his home.

A preliminary forensic examination of the laptop revealed 556 child pornography image files, created on or about March 17, 2016, depicting the sexual abuse of prepubescent children by adult males. These images were stored under the computer's "derrick" user account. A secondary review revealed 759 more images of child pornography in the laptop's unallocated space.

On the cell phone, officers discovered a message sent by Coffin on January 11, 2016, using an application called "Kik Messenger" (the "Kik message"). Coffin does not contest the

district court's factual finding that he wrote the Kik message. The Kik message described how at age fifteen, Coffin had made a six-year-old girl perform oral sex on him and how at age twenty-three, he had made a ten-year-old boy perform oral sex on him. The acts described in the Kik message were consistent with two past official reports of sexual abuse committed by Coffin. First, a January 21, 1998, Maine Department of Health and Human Services (DHHS) report stated that Coffin, at age fifteen, had a six-year-old girl perform oral sex on him. Coffin does not dispute that the report stated that he forced a six-year-old girl to perform oral sex on him when he was fifteen years old. Rather, he disputes the factual accuracy of the incident described in the report. Second, at age twenty-three, Coffin had been convicted in Maine state court for gross sexual assault, burglary, and aggravated criminal trespass after he entered a residence and then forced a ten-year-old boy to perform oral sex on him.

On March 29, 2016, Coffin went to the Bangor police station to discuss the return of his electronic devices. Coffin was arrested at the station because his seized laptop contained images depicting the sexual abuse of children. That possession violated the probation conditions of his 2006 Maine state gross sexual assault conviction.

In July 2016, before Coffin was federally indicted, Coffin called his girlfriend from jail in a recorded call and asked

her to delete his emails from her phone.[1] On October 7, 2016, state law enforcement and an agent from the federal Department of Homeland Security (DHS) (whose assistance had been requested by state authorities) executed a search warrant authorizing the search and seizure of computers, cell phones, and documents related to destruction of evidence and obstruction of justice at the residence of Coffin's girlfriend. DHS and state law enforcement found two letters handwritten by Coffin to his girlfriend. In the first, Coffin wrote: "I told them when they took the computer it belonged to you and I am sticking with that so it doesn't make me look bad. You are fine because you have your work schedule as proof that you could not have done this so you are ok." In the second letter, Coffin asked his girlfriend to "talk to rebecca, Jodi, adam, whoever they talked to and ask them what they asked and what they said back and if anything was recorded or written down. I need you to tell them not to speak to anyone else about this, or me, or the computer."

On February 15, 2017, Coffin was federally indicted for the crimes of receiving child pornography, possessing child pornography, and accessing child pornography with intent to view.

---

[1] Coffin's girlfriend admitted deleting Coffin's email accounts from her phone. She stated she did not do so at his request and that she did not recall the phone conversation with Coffin.

On September 2, 2017, a jail employee discovered a letter written by Coffin in a pile of magazines and books that Coffin had asked to be placed in his property box for his girlfriend to pick up. The letter was addressed to "Brad" and stated:

> What I would like you to do is say that I stopped by your place on the 17th of March 2016. If I was in Bangor and you can vouch[] for me I could not have been home during the search. . . . I would like you to say that I stopped by your apartment on Second St. . . . It was about 3pm and I said I stopped by because I was in town to look for some pliers to work on some rocker panels. And that I didn't call to tell you I was stopping by because I had left my phone at home[.] Say I visited for a couple hours and we talked about old times, what we used to do when we were kids and I left sometime before 6pm saying I had to be home for [my girlfriend] when she got out of work. That's it. There is no way for them to disprove it trust me I have looked into it.

At sentencing, witness testimony from a government investigator revealed that "Brad" was the name of an old friend of Coffin.

B.    Proceedings as to Sentencing

As said, Coffin pled guilty to two counts[2] in his indictment. This appeal is as to his sentence.

The PSR, prepared on April 16, 2018, and revised on May 14, 2018, determined that Coffin's base offense level was eighteen. There is no challenge to that determination. The PSR then applied

---

[2]    The United States moved to dismiss count one (receiving child pornography) on August 16, 2018, and the district court granted the motion the next day.

- 6 -

several enhancements to reach a total offense level of thirty-eight.[3] Coffin challenges the application of a five-level enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor, a two-level enhancement for obstruction of justice, and the denial of an acceptance of responsibility reduction.

The PSR calculated Coffin's criminal history score as seven, resulting in a CHC of IV. In reaching a score of seven, the PSR determined that Coffin's 2006 conviction for burglary, committed in August 2005, (the "August burglary") warranted three points under section 4A1.1(a) of the U.S. Sentencing Guidelines. As for Coffin's convictions for a second 2006 burglary, committed in September 2005 (the "September burglary"), gross sexual assault, and aggravated criminal trespass, the PSR did not add any points under section 4A1.1(a) but added one point for the gross sexual assault under section 4A1.1(e).

Based on a total offense level of thirty-eight and a CHC of IV, the PSR determined the guidelines sentencing range (GSR) to

---

[3] Coffin does not challenge the application of the two-level enhancement because the material involved minors under the age of twelve, the four-level enhancement because the offense involved material that portrayed "sadistic or masochistic conduct or other depictions of violence" or "sexual abuse or exploitation of infants and toddlers," the two-level enhancement because the offense involved the use of a computer, or the five-level enhancement because the offense involved 1,315 images of child pornography.

be 324 to 405 months' imprisonment. The statutory maximum term of imprisonment was twenty years on each count. 18 U.S.C. § 2252A(b)(2).

At sentencing, Coffin objected to the application of the pattern enhancement, the obstruction enhancement, the denial of an acceptance of responsibility reduction, and the calculation of his CHC. He argued for a sentence of about ten years.

The district court agreed with the enhancements laid out in the PSR and rejected Coffin's challenges. The court stated that even if it had erred in calculating Coffin's CHC, it would nevertheless upwardly depart to reach category IV.

Significantly, the district court then articulated its consideration of the § 3553(a) factors, stating that it considered each factor. It focused on the history and characteristics of the defendant, the nature and circumstances of the offenses, the need to avoid unwarranted sentencing disparities, and the need to protect the public from future crimes. The district court reviewed Coffin's personal and criminal history, including the details of the instant offense, which included over 1,300 images of child pornography. It expressed particular concern about Coffin's criminal history, especially the 2006 gross sexual assault of a ten-year-old boy. The district court also noted that Coffin was generally unrepentant and as late as January 2016, he had "bragged" in the Kik message about his past crimes. As said, the district

court sentenced Coffin to 240 months' imprisonment on each count, to be served concurrently.

## II.

In sentencing appeals, appellate review is bifurcated. We analyze his appeal in two steps: first, we "determine whether the sentence imposed is procedurally reasonable and then determine whether it is substantively reasonable." United States v. Abreu-García, 933 F.3d 1, 4 (1st Cir. 2019) (quoting United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015)).

In assessing preserved claims of procedural error (and these claims are preserved), "we review questions of law de novo, factual findings for clear error, and judgment calls for abuse of discretion." United States v. Hinkley, 803 F.3d 85, 92 (1st Cir. 2015). We will assume favorably to Coffin that review of the sentence's substantive reasonableness is for abuse of discretion. Id.

### A.   Procedural Reasonableness

#### 1.   Criminal History Category

##### a.   Harmless Error

We resolve the CHC argument by pointing to the district court's alternative rationale. After calculating Coffin's CHC to be IV, the district court stated that even if it had erred in interpreting the Guidelines and Coffin's CHC were only III, it would "upwardly depart under Section 4A1.3(a)(2)(B) because

criminal history category IV seems to more accurately reflect the seriousness of the defendant's criminal history and his risk of recidivism than does criminal history category III."

So, in either case, the district court stated it would have sentenced Coffin at category IV, leading to a GSR of 324 to 405 months in either scenario. See United States v. Romero-Galindez, 782 F.3d 63, 70 (1st Cir. 2015) ("If we find an alleged Guideline error would not have affected the district court's sentence, we may affirm." (quoting United States v. Marsh, 561 F.3d 81, 86 (1st Cir. 2009))).

b.    Sentencing Guidelines § 4A1.1 and § 4A1.2 Ambiguity

It is the interaction between sections 4A1.1 and 4A1.2 of the Guidelines which fuels Coffin's challenge to his CHC calculation. Section 4A1.1(a) states that in calculating the criminal history score, the district court should "[a]dd 3 points for each prior sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a). But section 4A1.2(a)(2) limits section 4A1.1(a) in situations where there is no intervening arrest between two sets of offenses and the sentences for those offenses were imposed on the same day. In those situations, prior sentences are treated as one, and the "longest sentence of imprisonment," if the sentences were imposed concurrently, receives the three points under section 4A1.1(a). Id.

§ 4A1.2(a)(2).  A "sentence of imprisonment" is defined as the portion that was not suspended.  Id. § 4A1.2(b)(2).

Here, four of Coffin's prior offenses were sentenced on the same day, without an intervening arrest between them.  The sentences he received were the following: eight years for the August burglary, fifteen years with all but eight years suspended for the gross sexual assault, eight years for the September burglary, and five years for the aggravated criminal trespass.  All four were to be served concurrently.  So, under this framework, all four are treated as one.

The Guidelines, however, do not provide a clear answer as to which sentence constitutes the "longest sentence of imprisonment."  Although the gross sexual assault resulted in a fifteen-year sentence, all but eight of those years were suspended, and so under section 4A1.2(b)(2), the gross sexual assault, like the two burglaries, amounts to an eight-year sentence.

Determining which conviction receives three points under section 4A1.1(a) is significant because section 4A1.1(e) directs the sentencing court to "[a]dd 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under [subsections 4A1.1(a), (b), or (c)] because such sentence was treated as a single sentence."  Id. § 4A1.1(e).  If one of the burglaries receives the three points, then an additional point is warranted for the gross sexual assault

as a crime of violence. But if the gross sexual assault receives the three points, then no additional points are warranted because burglary and aggravated criminal trespass are not crimes of violence.[4]

We urge the Sentencing Commission to provide clarification on how these provisions should be interpreted. See United States v. Gordon, 852 F.3d 126, 135 (1st Cir. 2017) (referring question of how to interpret a provision of the Guidelines to the Sentencing Commission).

2. Enhancements

a. Pattern Enhancement

The Guidelines instruct that "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels." U.S.S.G. § 2G2.2(b)(5). A "pattern of activity involving the sexual abuse or exploitation of a minor" is defined in the commentary to the Guidelines as "any

---

[4] A similar issue was addressed in United States v. Gilliam, 934 F.3d 854 (8th Cir. 2019). There, the defendant had received two ten-year sentences, one for first-degree burglary and one for attempted first-degree robbery, and two three-year sentences, all of which were to be treated as one under the Guidelines. Id. at 861. The PSR assigned him four points but did not specify which sentence received the three points under section 4A1.1(a) and which received the additional point as a crime of violence under section 4A1.1(e). Id. The Eighth Circuit concluded that the defendant had not shown error, much less plain error, because the PSR could have attributed three points to the first-degree burglary and an additional one point to the attempted first-degree robbery as a crime of violence. Id. at 861-62.

- 12 -

combination of two or more separate instances of sexual abuse or sexual exploitation of a minor by the defendant." Id. cmt. n.1. Coffin does not dispute that his 2006 gross sexual assault conviction qualifies as one incident involving the sexual abuse of a minor.

Coffin argues that the district court "erred in applying the pattern enhancement because there was insufficient evidence" to establish a second incident of sexual abuse of a minor. The district court concluded that the government had met its burden in showing it was "more likely than not that the defendant forced the six-year-old girl to perform oral sex on him when he was 15 in 1998," as described in the Maine DHHS report. Coffin argues that the district court should not have relied on the report because it was based on hearsay, it lacked indicia of reliability, he had no opportunity to test its accuracy through cross-examination, and, he asserts, it was inaccurate.

The defendant's argument misses the point, a point not missed by the district court: that Coffin's own Kik message stated that at age fifteen, he forced a six-year-old girl to perform oral sex on him, an act recorded in the 1998 report. The Kik message was also an admission by Coffin of a pattern in its statement that Coffin also forced a ten-year-old boy to perform oral sex on him. Further, Coffin does not specify why the report could not be found to be trustworthy. The admission reinforces the reliability of

- 13 -

the report.  So, we conclude that his objections do not undermine the district court's finding.

Coffin's arguments challenging the Maine DHHS report for being hearsay and not being subject to cross-examination also fail. Sentencing courts may consider hearsay evidence that "has sufficient indicia of trustworthiness to warrant a finding of probable accuracy," United States v. Acevedo-López, 873 F.3d 330, 340 (1st Cir. 2017) (quoting United States v. Rodríguez, 336 F.3d 67, 71 (1st Cir. 2003)), and evidence considered at sentencing does not need to be subjected to cross-examination, id.

b.    Obstruction of Justice Enhancement and Denial of Acceptance of Responsibility Reduction

The obstruction of justice enhancement was abundantly supported.  Section 3C1.1 provides for a two-level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction" and the obstructive conduct related to the offense of conviction or a closely related offense.  U.S.S.G. § 3C1.1.

Coffin asserts that he "never influenced or attempted to influence a witness."  As to the "Brad" letter, he argues that "Brad was not . . . a witness in the case" and "the letter never reached Brad, or anyone else."

- 14 -

There was ample evidence to support the district court's application of the obstruction enhancement. Coffin's letter asked Brad to corroborate Coffin's false alibi, which plainly constitutes an attempt to "unlawfully influenc[e] a . . . witness." Id. cmt. n.4(A) (providing a list of examples of conduct warranting the obstruction enhancement). Coffin's arguments that Brad never got the letter so Coffin did not obstruct justice lack merit because obstruction under the Guidelines encompasses attempt to obstruct. See United States v. O'Brien, 870 F.3d 11, 18 (1st Cir. 2017) ("Attempting to influence a witness not to cooperate with the government . . . is just the type of conduct covered by § 3C1.1.").

Coffin does not argue that he should have received the acceptance of responsibility reduction if the other challenged enhancements were correctly applied. So, Coffin has conceded that the acceptance of responsibility reduction was properly denied.

B.   Substantive Reasonableness

The district court's imposition of the statutory maximum sentence was substantively reasonable. Coffin unconvincingly argues that the seriousness of his offense, the need for deterrence, and the need to protect the public all require no more than a ten-year sentence. A sentence is substantively reasonable when the sentencing court gave a "plausible sentencing rationale and reached a defensible result." Abreu-García, 933 F.3d at 6

- 15 -

(internal quotation marks omitted). Here, Coffin's criminal history was of particular concern to the district court. Given that history, the district court reasonably concluded that Coffin represented "a clear and present danger" to society, in particular to young children. This was a plainly plausible rationale and a twenty-year sentence was a defensible result.[5]

Affirmed. We direct the Clerk to send a copy of this opinion to the Sentencing Commission.

---

[5] Coffin also challenges the Guidelines themselves, asserting that they are harsher than necessary, not supported by social science research, and many of the enhancements apply for "conduct present in virtually all cases." But "[t]he district court's broad discretion obviously includes the power to agree with the guidelines." United States v. Hassan-Saleh-Mohamad, 930 F.3d 1, 10 (1st Cir. 2019) (quoting United States v. Stone, 575 F.3d 83, 90 (1st Cir. 2009)).